BLACK & VEATCH CORPORATION,
Respondent,

v.

WELLINGTON SYNDICATE
and Continental Casualty
Company, Appellants.

No. WD 69286.

Missouri Court of Appeals,
Western District.

Oct. 27, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 2009.

Application for Transfer Denied
March 2, 2010.

Kirk T. May, Kansas City, MO, for Appellant, Wellington.

Susan F. Robertson, Kansas City, MO, for Appellant, Continental.

Roy C. Bash, Kansas City, MO, for Respondent.

Before THOMAS H. NEWTON, C.J., JAMES EDWARD WELSH, and KAREN KING MITCHELL, JJ.

JAMES EDWARD WELSH, Judge.

This appeal involves a contract dispute between Black & Veatch Corporation and Wellington Syndicate and Continental Casualty Company (Builder's Risk Insurers) about a policy of insurance. The primary issue is whether or not the insurance policy provides coverage for losses arising out of ocean transit. The circuit court granted summary judgment for Black & Veatch on the coverage issue and found that the policy covered losses arising out of ocean transit. A bench trial occurred on the Builder's Risk Insurers' request for reformation, and the circuit court found against the Builder's Risk Insurers. A jury trial occurred on Black & Veatch's claim for damages, and the jury awarded Black & Veatch $23,072,979 in damages. The jury also found that no set-off was justified even though Black & Veatch had received $35 million in settlement payments from its ocean marine insurer (Hiscox) and from

the manufacturer of the property lost in ocean transit (Toshiba). The Builder's Risk Insurers appeal, asserting eleven separate points. These eleven points, however, concern three basic areas: (1) coverage issues, (2) reformation issues, and (3) damages and set-off issues. We affirm.

### Factual and Procedural Background

Black & Veatch entered into a contract with MEP Pleasant Hill, LLC (MEP) to design, procure equipment for, and construct an electric generating facility, known as the Aries Power Plant, located near Pleasant Hill, Missouri. The Black & Veatch and MEP contract provided that MEP would provide builder's risk insurance and ocean marine cargo insurance. The parties agreed that Black & Veatch would purchase the required builder's risk and ocean marine cargo policies and charge the premium cost back to MEP.

Black & Veatch's risk management group engaged the insurance brokerage services of Willis Carroon Corporation of Missouri to act as Black & Veatch's agent and to draft, negotiate, and procure its builder's risk policy. The specific builder's risk policy for the Aries project was issued in June 2000, effective for the period September 27, 1999, to February 1, 2002, at a premium cost of $895,466. Both Continental and Wellington subscribed to the builder's risk policy for the Aries project.

The builder's risk policy for the Aries project contained the following provision pertaining to loss or damage to property "in transit" to the project site:

### II. COVERAGE

Except as hereinafter excluded, this Policy insures:

#### A. PROPERTY COVERED

All risks of physical loss or damage to the interest of the Insureds in all real and personal property owned or used by the Insureds, in the course of construction, erection, installation, repair, renovation and the like, *while in transit* and while in temporary storage on site or off site, or held in trust or on commission, consignment, or memorandum or on which they have made advances, or sold but not delivered or removed; property of others in the care, custody or control of any Insured or for which any Insured may be liable or agree to be liable under law, any project document, contract, or agreement whether written or oral, or for which instructions to insure are received by any Insured before any known or reported loss; and shipments made by others on instructions from or for the account of any Insured.

The policy also contained these additional provisions:

### VI. EXTENSIONS OF COVERAGE

This policy insures:

#### A. PROPERTY IN TRANSIT:

Loss of or damage to the Property Insured whilst it is situated other than at the Project Site for the purpose of storage, repair, modification, treatment or further work of construction *or whilst in transit by road, rail or inland waterway.*

. . . .

#### C. UNDISCLOSED DAMAGE 50/50 CLAUSE

In the event of loss of or damage to the Property Insured under this Policy being discovered *after risk under an applicable marine insurance policy has terminated* and if after investigation it is not possible

to ascertain whether the cause of such loss or damage happened *prior to the termination of the marine insurance*, it is understood and agreed that the Insurers hereon shall contribute 50% of the properly adjusted claim and the marine insurers will also agree to contribute 50% of the properly adjusted claim both less 50% of the deductible applicable.

The policy also provided that the territory it covered was "worldwide."

Black & Veatch contracted with Toshiba International Corporation (Toshiba) to supply two heat recovery steam generators to the Aries project. On July 21, 2000, while in ocean transit from Japan to the United States, critical components of the generators, called tube bundles, were damaged beyond repair when the vessel transporting them encountered a tropical storm in the Pacific Ocean. The vessel returned to Japan where Toshiba determined that the tube bundles had to be remanufactured. Toshiba replaced the damaged tube bundles at no cost to Black & Veatch. The delivery of the tube bundles to the project, however, was delayed by approximately six months.

Black & Veatch claimed that as a result of the delay it had to change the construction sequencing and employ additional labor and management to meet the project completion date and to avoid the significant penalties the contract imposed on Black & Veatch if the completion date was not met. Black & Veatch engaged two construction experts, Richard Sieracki and Joseph Egan, who prepared a report, based on nineteen invoices, that purported to document $26,140,000 in additional costs and expenses that Black & Veatch in-

curred because of the delay in receiving the tube bundles (delay damages).

Black & Veatch's ocean marine policy for the Aries Project was issued by a syndicate of Lloyd's of London Underwriters known as Hiscox. Hiscox agreed to settle with Black & Veatch for $25 million.[1] Black & Veatch also brought a separate claim against Toshiba for damages arising out of the delay in shipment of the tube bundles, as well other damages claims. Ultimately, Toshiba paid Black & Veatch $10.2 million in settlement of all claims.

On January 22, 2001, six months after the tube bundles had been damaged, Black & Veatch notified the Builder's Risk Insurers of the storm damage to the tube bundles and submitted a claim under the builder's risk policy for its delay damages. The Builder's Risk Insurers, through their adjuster, issued a reservation of rights letter, asserting that "[i]f our understanding that the loss occurred during ocean transit is correct, then the Builder's Risk policy would not apply." Black & Veatch then filed the instant suit against the Builder's Risk Insurers. Black & Veatch's first amended petition alleged counts for breach of contract (Count I), vexatious refusal to pay (Count II), and declaratory judgment (Count III).

Black & Veatch moved for partial summary judgment against the Builder's Risk Insurers, urging that as a matter of law the builder's risk policy covered the ocean transit loss giving rise to its delay damages claim. The Builder's Risk Insurers opposed Black & Veatch's motion and also moved for summary judgment. The Builder's Risk Insurers urged the court to declare as a matter of law that the builder's risk policy, read as a whole and giving

---

1. The actual payment by Hiscox was $19 million to Black & Veatch and $6 million to MEP, because MEP had already paid $6 million to Black & Veatch and MEP was also an insured under the ocean marine policy.

meaning to each of its provisions, did not cover ocean transit loss. Alternatively, the Builder's Risk Insurers urged that the documents and circumstances existing "prior to and contemporaneous with" the issuance of the builder's risk policy, as well as parol evidence subsequent to the issuance of the policy, confirmed that the parties never intended the builder's risk policy to cover property damaged during ocean transit.

On August 30, 2005, the circuit court granted Black & Veatch's motion for partial summary judgment, which mooted that portion of the Builder's Risk Insurers' summary judgment motion asserting no coverage for property damaged during ocean transit. The circuit court found that the policy was unambiguous and that coverage existed and no exclusion applied for the occurrence "described in the pleadings."

In light of the ruling as a matter of law that the builder's risk policy covered Black & Veatch for the ocean transit loss giving rise to its delay damages claim, the Builder's Risk Insurers filed a counterclaim seeking reformation of the builder's risk policy. The Builder's Risk Insurers sought to reform the policy to exclude ocean transit losses on the ground that the circuit court's interpretation of the policy to cover ocean transit losses was contrary to the parties' agreement.

On January 6, 2006, after a bench trial, the circuit court, stating that it had heard all the evidence, had observed the demeanor of the witnesses, and had considered their interest in the outcome of the case, expressly found "that both parties probably did not intend for the policy at issue to cover ocean transit loss." Nevertheless, the circuit court denied the Builder's Risk Insurers' claim for reformation on the ground that the Builder's Risk Insurers did not show by clear and convincing evidence that there was a preexisting agreement between the Builder's Risk Insurers and Black & Veatch that ocean transit losses would not be covered under the builder's risk policy and further failed to show that the policy contained any mutually mistaken or unintended wording.

After the reformation bench trial, the parties filed summary judgment motions on the issues of whether Black & Veatch could recover twice for the same loss and, if not, whether the Builder's Risk Insurers were entitled to set-off any amounts that Black & Veatch received from Hiscox, Toshiba, or MEP for the damages it was seeking to recover from the Builder's Risk Insurers. On May 25, 2007, the circuit court entered four separate summary judgment orders, which provided in relevant part:

> [D]efendants, Wellington Syndicate and Continental Casualty Company are entitled to a set-off and credit for the $6,000,000.00 the parties have stipulated that MEP recovered from the Hiscox Insurers, which recovery represents payment for the same elements of damage which MEP seeks payment from the defendant insurers in this case.[2]
>
> . . . .
>
> [A] set-off and credit shall be allowed said defendants, [Wellington Syndicate and Continental Casualty Company,] for $6,000,000.00, or based on the amount determined by the trier of fact to have been previously recovered by Black & Veatch Corp., from MEP Pleasant Hill, LLC, to the extent that said recovery is for the same element or elements of damage as claimed in this case, as established by the evidence.
>
> . . . .

2. This ruling was entered in favor of the Builder's Risk Insurers and against MEP.

[A] set-off and credit shall be allowed said defendants, [Wellington Syndicate and Continental Casualty Company,] based on the amount determined by the trier of fact to have been previously recovered by Black & Veatch Corp., from the Hiscox Insurers, to the extent that said recovery is for the same element or elements of damage as claimed in this case, as established by the evidence.

. . . .

[D]efendants, Wellington Syndicate and Continental Casualty Company are entitled to a set-off and credit to the extent that Black & Veatch Corporation has been paid by Toshiba Corporation for the same damages or elements of damages as claimed in this case and . . . that a set-off and credit shall be allowed, based on the amount determined by the trier of fact to have been previously recovered by Black & Veatch Corporation from Toshiba Corporation to the extent that said recovery was for the same element or elements of damage which Black & Veatch Corporation claims in this case against defendants, Wellington Syndicate and Continental Casualty Company.

Prior to the damages trial, the Builder's Risk Insurers asked the circuit court to bifurcate the damages and set-off issues, but the circuit court denied this request. The damages trial started October 30, 2007, and concluded on November 8, 2007. Black & Veatch claimed the total amount owed by Builder's Risk Insurers was $23,122,979, consisting of $22,948,735 for expediting expenses and increase in cost of work resulting from the delayed delivery of the tube bundles (also referred to as delay damages) and $174,244 in claim preparation expenses.

On November 8, 2007, the jury returned verdicts awarding Black & Veatch the full amount of its delay damages claim of $22,948,735. The jury further found that, of the more than $35 million paid by Hiscox and Toshiba, "NONE" was payment of the same delay damages awarded to Black & Veatch in this action. In addition, the jury awarded Black & Veatch $174,244 for claim preparation expenses. The circuit court reduced the total award by the Builder's Risk Policy deductible of $50,000 and entered a total judgment of $23,072,979 in favor of Black & Veatch and against the Builder's Risk Insurers.

The circuit court denied the Builder's Risk Insurers' post-trial motions and taxed costs of $17,320.22. The Builder's Risk Insurers appeal.

## ANALYSIS

### Coverage Issues

In their first point relied on, the Builder's Risk Insurers assert that the circuit court erred in entering summary judgment in favor of Black & Veatch on their request for declaratory judgment because the builder's risk policy did not provide coverage for ocean transit losses. In particular, they contend that, reading the builder's risk policy as a whole and giving meaning to all of its provisions, the "in transit" coverage afforded by the policy is limited to "transit by road, rail or inland waterway." We disagree.

When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the circuit court's granting of a summary judgment *de novo*. *Id.* "The propriety of summary judgment is purely an issue of law." *Id.* We will

affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* at 380.

In construing insurance policies, we apply the rules of contract construction because insurance policies are contracts. *Blair By Snider v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605, 606 (Mo. banc 2003). The primary rule in interpreting a contract is "to ascertain the intent of the parties and then give effect to that intent." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 395 (Mo. banc 2001) (citations and quotation marks omitted). "When there is no ambiguity in the contract, the intent of the parties is to be gathered from [the contract] alone." *Id.* (citations and quotation marks omitted). "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). Moreover, the fact that the parties disagree as to the correct interpretation of insurance policy language does not render the policy ambiguous. *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 794 (Mo.App.2006).

The builder's risk policy at issue provided that it insures:

All risks of physical loss or damage to the interest of the Insureds in all real and personal property owned or used by the Insureds, in the course of construction, erection, installation, repair, renovation and the like, *while in transit* and while in temporary storage on site or off site, or held in trust or on commission, consignment, or memorandum or on which they have made advances, or sold but not delivered or removed; property of others in the care, custody or control of any Insured or for which any Insured may be liable or agree to be liable under law, any project document, contract, or agreement whether written or oral, or for which instructions to insure are received by any Insured before any known or reported loss; and shipments made by others on instructions from or for the account of any Insured.

Further, the policy provided that the territory that it covered was "worldwide."

The plain language of the policy unambiguously insures "all risks" on a "worldwide" basis. This means all risks of damage to covered property are insured regardless of where the loss occurs, unless the particular risk is excluded. As this court's Eastern District explained in *Pakmark Corp. v. Liberty Mutual Insurance Co.*, 943 S.W.2d 256, 259 (Mo.App. 1997):

Under an all-risk insurance policy, recovery will be allowed for all fortuitous losses, unless the policy contains a specific provision expressly excluding the loss from coverage. *Missouri Commercial Investment Co. v. Employers Mutual Casualty Co.*, 680 S.W.2d 397, 400 (Mo.App.1984) (quoting 13A G. Couch *Cyclopedia of Insurance Law* § 48:141 at 139 (R. Anderson 2d ed.1982)).

The policy in this case covers all risks of physical loss or damage to property owned or to be used by Black & Veatch "while in transit." The tube bundles were damaged during a tropical storm on the Pacific Ocean while in transit from Japan to the United States. Thus, unless the policy excluded coverage for ocean transit losses, the loss of the tube bundles is covered under the policy.[3]

---

**3.** The policy also covers all risks to property "for which instructions to insure are received by any Insured." Black & Veatch's contract with MEP expressly required Black & Veatch

The builder's risk policy contains two exclusion sections: "Perils Excluded" and "Property Excluded." Neither of those sections excludes ocean transit risk. The unambiguous policy language, therefore, does not preclude coverage for the tube bundles damaged during ocean transit.

The Builder's Risk Insurers assert, however, that two provisions in the policy's "Extension of Coverage" section exclude coverage for ocean transit risks. We disagree.

The first provision provides:

## VI. EXTENSIONS OF COVERAGE

This policy insures:

### A. PROPERTY IN TRANSIT:

Loss of or damage to the Property Insured whilst it is situated other than at the Project Site for the purpose of storage, repair, modification, treatment or further work of construction *or whilst in transit by road, rail or inland waterway.*

The Builder's Risk Insurers contend that this particular provision limits "in transit" coverage to "transit by road, rail or inland waterway" and, therefore, oceanic coverage is excluded. This particular provision, however, does not exclude anything. Contrary to what the Builder's Risk Insurers assert, this provision provides an extension of coverage. Specifically, the provision extends coverage where initial transit to the project site has ended and the insured property is subsequently "situated other than at the Project site" for the "purpose of storage, modification, treatment or further work of construction" or "whilst in transit by road, rail or inland waterway" for such purposes.

to insure property to be used in the construction of the Aries project. Moreover, the policy covers all risk to "shipments made by others on instructions from or for the account

The second provision provides:

## VI. EXTENSIONS OF COVERAGE

This policy insures:

. . . .

### C. UNDISCLOSED DAMAGE 50/50 CLAUSE

In the event of loss of or damage to the Property Insured under this Policy being discovered *after risk under an applicable marine insurance policy has terminated* and if after investigation it is not possible to ascertain whether the cause of such loss or damage happened *prior to the termination of the marine insurance,* it is understood and agreed that the Insurers hereon shall contribute 50% of the properly adjusted claim and the marine insurers will also agree to contribute 50% of the properly adjusted claim both less 50% of the deductible applicable.

This provision's application is dependent on three conditions: (1) an applicable separate marine insurance policy, (2) that marine policy's termination, and (3) the inability to determine by investigation when damages were incurred. It is merely a provision that extends coverage in situations when an investigation cannot determine when damages were incurred after an applicable marine insurance policy has terminated. Such provision is not even applicable or at issue in this case and does not establish that damages arising from ocean transit are excluded under the policy. Indeed, this provision does not even mandate that insureds have a separate marine insurance policy.

of any Insured." Toshiba, at the direction and for the account of Black & Veatch, shipped the tube bundles from Japan for use in constructing the Aries project.

The plain language of the policy unambiguously provides "worldwide," "all risk" coverage, without exclusion for ocean transit of covered property. The circuit court, therefore, did not err in concluding that coverage existed for the losses incurred by the ocean transit of the tube bundles and properly granted summary judgment in favor of Black & Veatch. Point I is denied.

In their second point relied on, the Builder's Risk Insurers contend that the circuit court erred in entering summary judgment in favor of Black & Veatch on the issue of coverage because all of the evidence existing prior to and contemporaneous with the formation of the insurance contract and all of the relevant parol evidence establish that the parties did not intend for the policy to cover property damaged during ocean transit. Unless the insurance policy is ambiguous, "the intent of the parties is determined based on the contract alone, and not based on extrinsic or parol evidence." *Atlas Reserve Temps., Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo.App.2001). Thus, because the policy in this case is unambiguous, we do not consider extrinsic or parol evidence. Point II is denied.

In their fourth point relied on, the Builder's Risk Insurers claim the circuit court erred regarding another issue involving coverage. In particular, they contend that the circuit court erred in denying their motion for directed verdict or for judgment notwithstanding the verdict in the trial on Black & Veatch's claim for damages because the builder's risk policy did not provide coverage for ocean transit losses. Their claim is without merit.

After the circuit court determined on summary judgment that the policy unambiguously provided coverage and after the circuit court denied the insurers' request for reformation in a bench trial, the only issue that remained to be adjudicated at the jury trial was the issue of damages. There was nothing to submit to the jury on the issue of coverage, other than the fact that the circuit court had found coverage under the policy. The circuit court, therefore, properly denied the Builder's Risk Insurers' motion for directed verdict or for judgment notwithstanding the verdict regarding the policy coverage issue. Point IV is denied.

**Reformation Issues**

In their third point, the Builder's Risk Insurers assert that the circuit court erred in entering judgment in favor of Black & Veatch on the Builder's Risk Insurers' counterclaim for reformation. The Builder's Risk Insurers contend that, if the policy as written afforded coverage, then reformation was proper because clear and convincing evidence established that the parties did not intend for the policy to cover losses arising from damages sustained during ocean transit. We disagree.

In a court-tried case, we will affirm the circuit court's judgment unless substantial evidence does not support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and inferences in the light most favorable to the prevailing party and disregard all contrary evidence. *Walton v. City of Berkeley*, 223 S.W.3d 126, 128 (Mo. banc 2007).

After the circuit court entered partial summary judgment in favor of Black & Veatch on the issue of coverage, the Builder's Risk Insurers sought to reform the policy to include an express exclusion for all property damage occurring in transit, except for "transit by road, rail or inland waterway." After a four-day bench trial, the circuit court denied the Builder's Risk Insurers' counterclaim for reformation and

found that the policy contained no mistakes as written.

 Reformation is "an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake." *Morris v. Brown*, 941 S.W.2d 835, 840 (Mo.App. 1997). "For reformation on grounds of mistake, the primary factual issues to be established are the existence of a prior agreement and mutual mistake." *Everhart v. Westmoreland*, 898 S.W.2d 634, 637 (Mo.App.1995). "The mistake must be mutual and common to both parties and must reveal that both parties did what neither intended. The party seeking reformation must show that the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the parties' true prior intentions." *Id.* (citations omitted). "To support reformation for mutual mistake, the evidence must be clear, cogent, and convincing and upon testimony entirely exact and satisfactory." *Morris*, 941 S.W.2d at 840.

Viewing the evidence in the light most favorable to the circuit court's judgment and disregarding all contrary evidence and inferences, the evidence established that the goal of Black & Veatch and Black & Veatch's broker, Willis Carroon Corporation of Missouri, was to obtain the broadest builder's risk insurance coverage for Black & Veatch and the Aries project. Explicit language excluding ocean transit was deleted by the broker from the policy during policy negotiations. In turn, the broker proposed a "Property Covered" provision that was sufficiently broad to include all transits of the insured interests. The parties exchanged drafts of policy language and negotiated the policy wording from August 1998 to June 2000, until the wording of the policy was agreed upon, which included the broad "Property Covered" provision and not an exclusion for ocean transit. The Aries policy was signed by the Builder's Risk Insurers and had the broad "Property Covered" provision and did not have any exclusion for ocean transit.

Based upon this evidence, the circuit court did not err in denying the Builder's Risk Insurers' counterclaim for reformation.[4] The Builder's Risk Insurers did not establish by clear, cogent, and convincing evidence that a preexisting agreement existed between the parties concerning an exclusion for ocean transit losses, that a mistake existed in the policy as written, or that the parties to the agreement acted under a mutual mistake. Reformation, therefore, was unwarranted under the circumstances.

 The Builder's Risk Insurers make much of the fact that the circuit court stated in its conclusions of law:

Of little consolation and of no consequence whatsoever is the fact that the Court, having had the opportunity to not only hear the evidence but to observe the demeanor of all of the witnesses, and to consider the interests of each particular witness in the outcome of the case, believes that both parties *probably* did not intend for the policy at issue to cover ocean transit loss.

The court concluded, however, that the Builder's Risk Insurers did not show "by clear and convincing evidence that there was a preexisting agreement between the Insurers and Black & Veatch; and/or that

4. The Builder's Risk Insurers rely on contrary evidence and testimony in support of their position that clear, cogent, and convincing evidence established that the parties did not intend for the policy to cover losses arising from damages sustained during ocean transit. Their reliance on this contrary evidence, however, ignores our standard of review and disregards the circuit court's superior ability to judge the credibility of witnesses.

the Policy did not reflect the preexisting agreement between the parties; and/or that the Policy contain[ed] a mistake as written; and/or that the mistake was mutual." To prevail, the Builder's Risk Insurers had to show "by clear, cogent, convincing evidence beyond a preponderance of the evidence and so as to leave no room for reasonable doubt" that they were entitled to reformation. *Am. Family Mut. Ins. Co. v. Bach,* 471 S.W.2d 474, 477 (Mo.1971). That the circuit court thought that both parties *"probably"* did not intend for the policy to cover ocean transit losses merely shows that the Builder's Risk Insurers did not meet their burden of producing clear, cogent, and convincing evidence of that fact. Point III is denied.

**Damages and Set-off Issues**

In points five and six, the Builder's Risk Insurers assert that the circuit court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict because they were entitled to a set-off for amounts paid to Black & Veatch by Hiscox and Toshiba. In particular, in point five, the Builder's Risk Insurers contend that they were entitled to set-off the $35.2 million Black & Veatch previously received from Hiscox and Toshiba against the jury's verdict of $23,072,979. The Builder's Risk Insurers claim that Black & Veatch had a duty to allocate the $35.2 million it received from Hiscox and Toshiba and that its failure to do so resulted in Black & Veatch's receiving a double recovery. The Builders' Risk Insurers assert that Black & Veatch had the duty and burden to allocate the $35.2 million in settlements it received from Hiscox and Toshiba between the delay damages that Black & Veatch was seeking to recover from the Builder's Risk Insurers and the other damages Black & Veatch sought against Hiscox and Toshiba. We disagree.

The standard of review of a denial of a motion for judgment notwithstanding the verdict is essentially the same as the review for a denial of a motion for directed verdict. *Clevenger v. Oliver Ins. Agency, Inc.,* 237 S.W.3d 588, 590 (Mo. banc 2007). In determining whether the evidence was sufficient to support the jury's verdict, we review the evidence in the light most favorable to the verdict, give the prevailing party the benefit of all reasonable inferences, and disregard unfavorable evidence. *Id.* "This Court will reverse the jury's verdict for insufficient evidence only where there is a 'complete absence of probative fact' to support the jury's conclusion." *Seitz v. Lemay Bank & Trust Co.,* 959 S.W.2d 458, 461 (Mo. banc 1998) (footnote omitted). When reasonable minds can differ on a question put to a jury, this court should not disturb the jury's verdict. *Washington by Washington v. Barnes Hosp.,* 897 S.W.2d 611, 615 (Mo. banc 1995).

 "Set-off has traditionally been considered an independent action that must be pleaded as a counterclaim," or as an affirmative defense. *Brizendine v. Conrad,* 71 S.W.3d 587, 592–93 (Mo. banc 2002). "The party asserting an affirmative defense bears the burden of proof." *Kansas City Power & Light Co. v. Bibb & Assocs., Inc.,* 197 S.W.3d 147, 156 (Mo. App.2006). "As the party asserting the affirmative defense, [the Builder's Risk Insurers, not Black & Veatch], had the burden to posture the case to ensure that the trial court could apply [their] defense." *Id.* at 157. Thus, it was the Builder's Risk Insurers' burden to establish all elements of their set-off defense, including whether Black & Veatch was paid by Hiscox and Toshiba for some or all of the same damages as awarded Black & Veatch in this action.

The Builder's Risk Insurers rely on *Hogan v. Armstrong World Industries*, 840 S.W.2d 230 (Mo.App.1992), in support of their contention that Black & Veatch had the burden to allocate the prior recoveries. *Hogan*, however, is not applicable to this case. *Hogan* merely addresses the credit required by section 537.060, RSMo, in settlement of claims against "one of two or more persons liable in tort for the same injury or wrongful death." Such is not at issue here. Black & Veatch's claims against the Builder's Risk Insurers arise from the insurers' breach of contract.

Black & Veatch, therefore, did not have a duty to allocate the recoveries. The Builder's Risk Insurers bore the burden of proof on their set-off defense, including whether Black & Veatch was paid by Hiscox and Toshiba for some or all of the same damages as awarded Black & Veatch in this action. The circuit court correctly ruled by summary judgment that the Builder's Risk Insurers were entitled to a set-off in such sum as the trier of fact determined that the Hiscox and Toshiba payments overlapped with the Builder's Risk Insurers' obligations in this case. The burden remained with the Builder's Risk Insurers to prove the extent of such overlap, if any. Point V is denied.

In point six, the Builder's Risk Insurers claim that the $35.2 million that Black & Veatch received from Hiscox and Toshiba was for the same delay damages that Black & Veatch sought to recover from the Builder's Risk Insurers. The jury, however, disagreed. The jury found that, of the more than $35 million paid by Hiscox and Toshiba, "NONE" was payment of the same delay damages awarded to Black & Veatch in this action. In other words, the Builders' Risk Insurers did not carry their burden in establishing which damages were the same.

The instruction given to the jury said:

If you find in favor of [Black & Veatch], then you must award [Black & Veatch] such sum as you believe [Black & Veatch] incurred for expediting expenses and/or for increase in cost of working as a result of the occurrence mentioned in the evidence.

In determining the amount of [Black & Veatch's] damages you are not to consider any evidence of prior payments made to [Black & Veatch]. The judge will consider any such payments and adjust your award as required by law.

If you believe the ocean cargo insurance carriers (Hiscox) and/or Toshiba previously paid [Black & Veatch] for some or all of the same damages as awarded [Black & Veatch] in this action, then you must find the amount of such damages that are the same.

The jury returned a verdict finding that Black & Veatch had been paid "{$NONE} by the Ocean Cargo Carriers (Hiscox) and/or Toshiba for some or all the same damages awarded [Black & Veatch] in this action."

The Builder's Risk Insurers claim that the uncontradicted evidence establishes that the $35.2 million that Black & Veatch received from Hiscox and Toshiba was for the same delay damages, which Black & Veatch sought to recover from the Builder's Risk Insurers. The jury, however, was not obligated to believe this evidence. " 'The jury, as the trier of fact, was free to believe or disbelieve all, part or none of the testimony, *even if it was unimpeached or uncontradicted.*' " *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 795 (Mo.App.2008) (citation omitted). That the jury concluded that Black & Veatch had been paid none of the same damages by Hiscox and Toshiba as awarded in this action shows that the Builder's Risk Insurers did not meet their

burden of proof. " 'A judgment notwithstanding the verdict is a drastic action,' " *Martha's Hands, LLC v. Starrs,* 208 S.W.3d 309, 314 (Mo.App.2006) (citation omitted), and is not appropriate in this case. The circuit court, therefore, did not err in denying the Builder's Risk Insurers' motions for directed verdict and motion for judgment notwithstanding the verdict. Point VI is denied.

Moreover, to the extent that the Builders' Risk Insurers contend in their seventh point relied on that the circuit court erred in denying their motion for new trial because no evidence supported the jury's finding that Black & Veatch had been paid "NONE" by the ocean marine insurers and Toshiba, their contention is without merit for the same reasons.

The circuit court's denial of a motion for new trial is reviewed for an abuse of discretion. *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 372 (Mo. banc 1993). The Builder's Risk Insurers had the burden of proof on their affirmative defense of set-off, and the jury was free to believe or disbelieve all, part, or none of the Builder's Risk Insurers' evidence and witnesses. *Smith,* 275 S.W.3d at 795. The evidence presented by the Builder's Risk Insurers did not make it legally conclusive that the Builder's Risk Insurers were entitled to some set-off. The jury, therefore, was free to find against the party having the burden of proof, i.e. the Builder's Risk Insurers, and the jury's verdict in favor of the party not bearing the burden of proof, i.e. Black & Veatch, did not have to be supported by any evidence. *See Desselle v. Complete Home Concepts, Inc.,* 211 S.W.3d 168, 172 (Mo.App.2007).

■ The verdict in this case " 'rests upon a finding by the jury against the party having a burden of proof.' " *Id.* (citation omitted). Consequently, the Builder's Risk Insurers' contention that the verdict was unsupported by substantial evidence or by any evidence presents nothing for appellate review. Where a motion for new trial argues that the jury's verdict was against the weight of the evidence and the party seeking a new trial had the burden of proof, the circuit court's denial of the motion for new trial "is 'a conclusive determination that cannot be overturned on appeal.' " *Id.* (citation omitted). Point VII is, therefore, denied.

■ In their eighth point relied on, the Builder's Risk Insurers claim that the circuit court erred in denying their request for a bifurcated trial to separately determine the issue of the amount of Black & Veatch's claimed delay damages from the issue of the amount of set-off. They also asserted this claim in their motion for new trial. The Builder's Risk Insurers contend that they were denied a fair trial and were prejudiced because the jury was allowed to hear evidence of the payments made by Hiscox and Toshiba before it determined the amount of Black & Veatch's delay damages. We disagree.

■ The decision of whether to allow separate trials is within the circuit court's sound discretion, and we will not disturb the court's ruling absent an abuse of discretion. *Guess v. Escobar,* 26 S.W.3d 235, 239 (Mo.App.2000). "A discretionary ruling is presumed correct, and an abuse of discretion only occurs where we find the ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable that it shocks the sense of justice." *Id.*

Rule 66.02 states:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any

separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

The circuit court noted and weighed the potential prejudice with the judicial economy concerns and found that bifurcation was unnecessary to serve the purposes of Rule 66.02. The circuit court determined that bifurcation was not the best way to proceed because Black & Veatch had four or five witnesses who would have to testify in both parts of the bifurcated trial and noted that it had set aside time to conduct the trial and did not "have twelve weeks to try [the] case." Moreover, the circuit court gave a jury instruction, which instructed the jury that, in determining the amount of any damages award, it was "not to consider any evidence of prior payments made to [Black & Veatch]." The circuit court's decision refusing to bifurcate the trial was well within its sound discretion and does not shock our sense of justice. The circuit court, therefore, did not err in denying the Builder's Risk Insurers' request to bifurcate the trial and their motion for new trial on this ground. Point VIII is denied.

In their ninth point on appeal, the Builder's Risk Insurers contend that the circuit court erred: (1) in overruling their objections to Black & Veatch's proposed verdict director concerning expediting expenses, (2) in refusing their withdrawal instruction, and (3) in denying their motion for new trial based upon the instructional error. In particular, they assert that no substantial evidence existed to support the alternative disjunctive submission of "expediting expenses" because Black & Veatch failed to present substantial evidence that it incurred any expediting expenses recoverable under the builder's risk policy.

" '[A] party is *entitled* to an instruction upon any theory supported by the evidence.' " *Marion v. Marcus,* 199 S.W.3d 887, 892 (Mo.App.2006) (citation omitted). We, therefore, review the issue of whether the jury was properly instructed *de novo,* as a question of law. *Harvey v. Washington,* 95 S.W.3d 93, 97 (Mo. banc 2003). We will reverse a verdict if "the offending instruction misdirected, misled, or confused the jury, resulting in prejudicial error." *Id.* An erroneous instruction warrants reversal if the error "resulted in prejudice" and the error "materially affected the merits of the action." *Marion,* 199 S.W.3d at 894.

Where disjunctive instructions are given, substantial evidence must support each element of the disjunctive instruction. *BMK Corp. v. Clayton Corp.,* 226 S.W.3d 179, 189 (Mo.App.2007). " '[E]ach alternative claim ... must be able to stand alone and there must be sufficient evidence to support each allegation.' " *Id.* (citation omitted). "In determining whether the instruction is supported by substantial evidence, we must consider the evidence in the light most favorable to the plaintiff and disregard the defendant's evidence unless it tends to support the submission of the instruction." *Id.* " 'Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide a case.' " *Wright v. Barr,* 62 S.W.3d 509, 526 (Mo.App.2001) (citation omitted).

The verdict director instruction given to the jury said:

Your verdict must be for [Black & Veatch] if you believe:

With respect to the tube bundles referred to in the evidence that were damaged in ocean transit, [Black & Veatch] either incurred *expediting expenses* or an increase in cost of working.

Unless you believe [Black & Veatch] is not entitled to recover by reason of Instruction Number 15 or 16.

The builder's risk policy provided insurance for "expediting expenses," which the policy defined as: "With respect to damaged covered property, the reasonable extra cost to make temporary repairs, expedite permanent repairs, and expedite permanent replacement."[5] The Builder's Risk Insurers acknowledge that Black & Veatch presented evidence of increased costs resulting from the re-sequencing of many of the scheduled construction activities at the Aries project so that Black & Veatch could meet the contract completion date as a result of the delay in shipment of the tube bundles. The Builder's Risk Insurers assert, however, that only expenses incurred to directly repair and replace the tube bundles were covered by the policy's "expediting expenses" language. We, however, do not believe that the expediting expenses provision is that limited.

This provision applies whenever costs are incurred "to make temporary repairs, expedite permanent repairs, and expedite permanent replacement" and are incurred "*with respect to* " damaged property. This provision does not restrict recoverable costs to merely making repairs or replacing the tube bundles. Black & Veatch presented substantial testimony and documentary evidence to substantiate its claims of cost incurred to "make temporary repairs, expedite permanent repairs, and expedite permanent replacement" at the Aries project site while the tube bundles were being remanufactured. The circuit court, therefore, did not err in overruling the Builder's Risk Insurers' objections to

the verdict director, in refusing the Builder's Risk Insurers' withdrawal instruction, or in denying the Builder's Risk Insurers' motion for new trial based upon the alleged instructional error. Point IX is denied.

█ In their tenth point, the Builder's Risk Insurers contend that the circuit court erred in sustaining Black & Veatch's objection to the Builder's Risk Insurers' closing argument and in denying their motion for new trial on this ground. The Builder's Risk Insurers claim that they should have been permitted to argue that Black and Veatch had the burden of proof on the cost of capital claim that it asserted in opposition to the Builder's Risk Insurers' set-off claim.

"We review the circuit court's ruling in closing argument for an abuse of discretion." *Boshears v. Saint–Gobain Calmar, Inc.,* 272 S.W.3d 215, 226 (Mo.App.2008). During closing argument, the Builder's Risk Insurers argued:

[BUILDER'S RISK INSURERS' ATTORNEY]: ... Did they show you one document—this is a multinational billion dollar company. You don't think they have as many number crunchers as you can imagine over there? You're dreaming. They know where every penny goes. Did they bring you one accountant, one CPA, just a record-keeper to produce one document that they suffered one cent of cost of capital. No, sir. Not one. And they have the burden of proof on that if they want to claim that they had a cost of capital.

[BLACK & VEATCH'S ATTORNEY]: Excuse me, Your Honor. It's a misstatement. We are not claiming cost of capital in this case. We do not have a

5. This language was also submitted to the jury as an agreed definition instruction for expe-

diting expenses.

burden of proof to try to prove cost of capital in this case. It's an attempt to mislead and improperly argue to the jury.

THE COURT: There's no claim for cost of capital? It's sustained.

[BLACK & VEATCH'S ATTORNEY]: And therefore, we don't have any burden to prove cost of capital.

THE COURT: The objection is sustained.

The Builder's Risk Insurers were attempting to shift the burden to Black & Veatch on the Builder's Risk Insurers' affirmative defense of set-off. They were asking the jury what evidence did Black & Veatch present on the cost of capital. Black & Veatch had no such burden. First, Black & Veatch did not assert a cost of capital claim against the Builder's Risk Insurers. Second, as previously discussed, the Builder's Risk Insurers bore the burden of proof on its claim for set-off, and Black & Veatch had no obligation to present any evidence.

Black & Veatch did introduce evidence of the Hiscox cost of capital claim to counter the Builder's Risk Insurers argument that Black & Veatch had already received payment for the same claims it was asserting against the Builder's Risk Insurers. The point of the evidence was that the Hiscox settlement payment was made in exchange for a full release of all claims asserted in that litigation including the cost of capital claim. The Builder's Risk Insurers, however, had the burden of proving what claims the Hiscox settlement included—including whether or not it was a settlement for any cost of capital claims. They bore the burden of establishing what portion of the Hiscox settlement should be set-off against some or all of the same damages as awarded Black & Veatch in this action. Thus, the Builders Risk Insurers' contention is without merit. The

circuit court did not abuse its discretion in sustaining Black & Veatch's objection to the Builder's Risk Insurers' closing argument and did not abuse its discretion in denying the Builder's Risk Insurers' motion for new trial on this ground. Point X is denied.

 In their final point, the Builder's Risk Insurers contend that the circuit court erred in denying their request for a set-off for the six million dollars because Black & Veatch had already received six million dollars from MEP for the same damages that were claimed against the Builder's Risk Insurers in this case.

 We agree with Black & Veatch that the Builder's Risk Insurers' point relied on fails to identify the action or ruling of the circuit court that is claimed to be erroneous. *See* Rule 84.04(d)(1)(A). The Builder's Risk Insurers' point merely points to the circuit court's denial of some vague "request" for set-off. A blanket challenge that does not identify a specific circuit court ruling or action being challenged does not comply with Rule 84.04(d)(1)(A). A point relied on that does not identify the specific circuit court error preserves nothing for appellate review. *Columbia Mut. Ins. Co. v. Long*, 258 S.W.3d 469, 473 (Mo.App.2008).

In the argument portion of their brief, the Builder's Risk Insurers states that "[b]oth prior to the entry of judgment on the jury's verdict and in their Post–Trial Motions, the Builder's Risk Insurers sought such a set-off order." We can only speculate that the request referred to in the point relied on is either the Builders' Risk Insurers' motion to amend, motion for remittitur, or their post-verdict offer of a proposed form of judgment. Even if we were to address the Builder's Risk Insurers' contention in regard to the denials of these motions or of their post-verdict offer

of a proposed form of judgment, their contention would be without merit. The circuit court in its summary judgment order ruled that the Builder's Risk Insurers were entitled to a set-off of either six million dollars **OR** an "amount determined by the trier of fact to have been previously recovered by Black & Veatch Corp., from MEP Pleasant Hill, LLC, to the extent that said recovery is for the same element or elements of damage as claimed in this case, as established by the evidence."

The Builder's Risk Insurers correctly point out the MEP expressly stipulated that the six million dollars it had received from Hiscox was for the same damages it was claiming against the Builder's Risk Insurers. However, contrary to what the Builder's Risk Insurers assert, the stipulation between MEP and the Builder's Risk Insurers expressly states that it "does not address whether MEP's $6,000,000 in damages is duplicative of Black & Veatch's damages claims, in whole or in part." Thus, the Builder's Risk Insurers still bore the burden of proof on its claim for set-off, including whether Black & Veatch recovered money from MEP that was for the same elements of damages as claimed in this case. Although the Builder's Risk Insurers claim that the evidence establishes that the six million dollars that Black & Veatch received from MEP was for the same delay damages that Black & Veatch sought to recover from the Builder's Risk Insurers, the jury was not obligated to believe this evidence. The jury was free to believe or disbelieve all, part, or none of the evidence. *Smith*, 275 S.W.3d at 795. The Builder's Risk Insurers simply did not meet their burden of proof. Point XI, therefore, is denied.

## CONCLUSION

We, therefore, affirm the circuit court's judgment. The circuit court did not err regarding any of the asserted issues of error concerning coverage, reformation, set-off or damages.

All concur.