**MERLYN VANDERVORT INVESTMENTS, LLC, and 7 Mile Investments, Inc., d/b/a Jeremiah's Night Club, Appellants,**

v.

**ESSEX INSURANCE COMPANY, INC., Respondent.**

**No. SD 29858.**

Missouri Court of Appeals, Southern District, Division Two.

Feb. 11, 2010.

Motion for Rehearing or Transfer to Supreme Court Denied March 5, 2010.

Application for Transfer Denied May 25, 2010.

Bernard Schmitt, Kansas City, MO, for Appellants.

Thomas B. Caswell, Lindsey A. Davis, Minneapolis, MN, Colly J. Durley, Columbia, MO, for Respondent.

MARY R. RUSSELL, Special Judge.

The issue in this case is whether the trial court correctly granted summary judgment in favor of an insurance company in interpreting a commercial insurance policy. More specifically, the issue is whether an endorsement provided additional coverage for the property loss suffered by Merlyn Vandervort Investments, LLC and 7 Mile Investments, Inc., d/b/a Jeremiah's Night Club (collectively "Insured") in a fire. This Court finds that Insured is entitled to additional coverage for fire damage as provided in the endorsement. The judgment is reversed and remanded.

## Background

Insured owned and operated Jeremiah's Night Club, a bar, restaurant, and entertainment center located in Lake Ozark. A fire destroyed the business, including the building, the business personal property, and the equipment on the premises. The fire investigator stated in his report that he could not identify "an exact cause or ignition source for this fire ... [a]lthough the electrical wiring is suspect and cannot be eliminated at this time." He also noted in his report that there was wiring in the building that "displayed very heavy arching [sic]."

Prior to the fire, Insured had purchased a commercial insurance policy and endorsement from Essex Insurance Company. The policy provided "building" coverage with a limit of $1.2 million, "business personal property" coverage with a limit of $400,000, and "business income" coverage with a limit of $120,000. The endorsement, entitled "Mechanical, Electrical or Pressure Systems Breakdown," was purchased as optional coverage. The policy declaration described the endorsement as "Equipment Breakdown Coverage with a limit of $1,600,000."

Following the fire, Essex paid Insured $1.2 million under the building coverage, $400,000 under the business personal property coverage, and $120,000 under the business income loss coverage. Insured sought further payment from Essex under the endorsement for the fire damage, asserting that it provided additional coverage with an additional limit of $1.6 million. Essex denied that portion of the claim, stating that fire damage is covered only in the policy and that the endorsement does not provide any additional coverage for the fire damage suffered. Instead, Essex argued that the endorsement "put back" coverage for certain policy exclusions, including mechanical, electrical, or pressure systems breakdown.

■ Insured brought a suit seeking damages against Essex for breach of contract and vexatious refusal to pay. Essex filed a motion for summary judgment as to all claims alleged against it, arguing that the endorsement did not provide additional coverage for damage caused by fire loss. Insured filed a cross-motion for partial summary judgment as to the breach of contract claim, arguing the endorsement provided additional coverage and policy limits for damage caused by all "specified causes of loss," including fire. The trial court sustained the Essex's motion for summary judgment and denied Insured's cross-motion for partial summary judgment. Insured appeals.[1]

1. Insured also claims error in the denial of its motion for partial summary judgment. This is not a final, appealable order, even when the denial occurs at the same time the trial court grants summary judgment to the other party.

### Standard of Review

Appellate review of summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* "When the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court." *See Grable v. Atl. Casualty Ins. Co.*, 280 S.W.3d 104, 106 (Mo.App. 2009) (internal quotation marks omitted).

 When interpreting the terms of an insurance policy, this Court applies the meaning that would be understood by an ordinary person of average understanding purchasing the insurance. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). If the policy is ambiguous, it will be construed against the insurer. *Id.* A policy is ambiguous if "there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Id.* If the policy is unambiguous, the policy will be enforced according to its terms. *Id.*

### Interpretation of the Policy

 The issue in this case is whether the endorsement, regardless of its limits, provides additional coverage beyond that provided by the policy in its unendorsed form for loss suffered by Insured in a fire.[2] Insured claims that the policy was ambiguous, requiring this Court to construe it against Essex. Alternatively, Insured contends that the endorsement unambiguously provided additional coverage for all

causes of loss, including fire. Both arguments require this Court to interpret the insurance contract, which includes the form policy, declarations, endorsements, and definitions, and determine, as a matter of law, what coverage the policy provides. *See Grable*, 280 S.W.3d at 107–108.

The unendorsed policy was comprised of several forms. First, the Building and Personal Property Coverage form provided, in relevant part:

> [Essex] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> . . . .
>
> 3. Covered Causes Of Loss
>
> See applicable Causes of Loss Form as shown in the Declarations.

Next, the Causes of Loss—Special Form CP 1030 ("Loss form") defined "covered causes of loss" as:

> When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>
> 1. Excluded in Section B., Exclusions; or
>
> 2. Limited in Section C, Limitations; that follow.

The relevant exclusion listed in Section B. stated:

> 2. [Essex] will not pay for loss or damage caused by or resulting from any of the following:
>
> a. Artificially generated electrical current, including electrical arcing, that disturbs electrical devices, appli-

---

*Grable v. Atl. Casualty Ins. Co.*, 280 S.W.3d 104, 106 n. 1 (Mo.App.2009).

**2.** This Court does not address Insured's arguments that if the endorsement applies to fire

damage, it provides coverage limits above and beyond the stated unendorsed policy limits. This issue was not included in Essex's motion for summary judgment.

ances or wires. But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

Further, the Loss form defined "specified causes of loss" [3] in Section F. as:

> *Fire*; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

(emphasis added).

Both parties agree that the unendorsed policy provided coverage for damage due to the peril of fire. In fact, Essex paid Insured $1.6 million pursuant to the unendorsed policy for property damage. It is also uncontested that the unendorsed policy excluded coverage for damage as a result of artificially generated electrical current, including electrical arcing, that disturbs electrical devices, appliances, or wires, and mechanical breakdown.[4] And although electrical or mechanical breakdown was excluded in the unendorsed policy, the parties agree that the endorsement expands the scope of covered perils, defined as "specified causes of loss" to include "direct damage to covered property" from electrical and mechanical breakdown. The endorsement provided, in relevant part:

> THIS ENDORSEMENT CHANGES THE POLICY
>
> . . . .
>
> This endorsement modifies and is subject to the insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

. . . .

CAUSES OF LOSS–SPECIAL FORM

. . . .

6. As respect the [Loss form] the following applies:

> a. The following EXCLUSIONS are deleted;
>
> The exclusions pertaining to:
>
> (1) Artificially generated electrical current, including electrical arcing, that disturbs electrical devices, appliances or wires.
>
> (2) Mechanical breakdown, including rupture or bursting caused by centrifugal force.

The crux of the dispute, however, is whether the endorsement provided additional coverage for fire. The relevant provision of the endorsement that is in dispute states as follows:

> 4. As respects to the [Loss form] the following applies:
>
> a. The following Definition, "Specified Causes of Loss," is deleted and replaced by the following:
>
> "Specified Causes of Loss" means the following: *Fire*; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; falling objects; weight of snow, ice or sleet; water damage; mechanical, electrical or pressure systems breakdown;
>
> . . . .
>
> (3) Mechanical, electrical or pressure systems breakdown means di-

---

**3.** The dissent posits an interpretation of "specified causes of loss" that is neither discussed by the parties nor apparent from a logical interpretation of the policy.

**4.** There is no dispute that if the excluded artificially generated electrical current results in fire, Essex will pay for the loss of damage caused by that fire.

rect damage to covered property from the following:

(a) Mechanical breakdown, including rupture or bursting caused by centrifugal force;

(b) *Artificially generated electrical current, including electrical arcing, that disturbs electrical devices, appliances or wires;*

(emphasis added).

Insured asserts that the endorsement provided additional coverage for fire in that the definition of "specified causes of loss" in the endorsement included the word "fire," as did the definition of "specified causes of loss" in the unendorsed policy. Yet Essex argues that an ordinary person of average understanding purchasing the policy would believe that the endorsement did not provide additional fire coverage because it was already covered in the unendorsed policy. Essex claims that because the endorsement's "specified causes of loss" added six words, "mechanical, electrical or pressure systems breakdown," it was the only peril that was covered. It asserts that the endorsement only "put back" the cause that was specifically excluded in the unendorsed policy.

■■ To determine whether an ambiguity exists, this Court reads the form policy, declarations, endorsement, and definitions. *See Grable,* 280 S.W.3d at 107–08. "If the language of the endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement." *Abco Tank & Mfg. Co.*

*v. Fed. Ins. Co.,* 550 S.W.2d 193, 198 (Mo. banc 1977).

We find no ambiguity in the endorsement's definition of "specified causes of loss." Despite Essex's argument that the endorsement did not provide any additional coverage for the peril of fire, the plain reading of the endorsement listed "fire" as one of the "specified causes of loss":

"Specified Causes of Loss" means the following: *Fire*; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; falling objects; weight of snow, ice or sleet; water damage; mechanical, electrical or pressure systems breakdown....

(emphasis added). While the endorsement's definition of "specified causes of loss" did add coverage for "mechanical, electrical or pressure systems breakdown," the balance of the itemized causes of loss was nearly identical to those enumerated in the unendorsed policy.[5] Nothing in the endorsement indicated that any of the identical "specified causes of loss" were to be excluded from the endorsement's coverage because they were already covered in the policy. An ordinary person of average understanding could reasonably construe that since "fire" was listed in both the policy and the endorsement, there was additional coverage.[6] Accordingly, this Court finds that, as a matter of law, the endorsement provided additional coverage for fire damage.[7]

---

**5.** The policy provides that "specified causes of loss" include "sinkhole collapse [and] volcanic action" while the endorsement's definition of "specified causes of loss" omits those perils.

**6.** The dissent falsely predicts that the majority's opinion endangers future interpretations

of contracts. However, this opinion is limited to the unique language of this policy.

**7.** Insured's arguments regarding extrinsic evidence are not addressed as this Court finds no ambiguity. *Black & Veatch Corp. v. Wellington Syndicate,* 302 S.W.3d 114 (Mo.App. 2009).

The grant of summary judgment is reversed and remanded.

SCOTT, C.J., dissents in separate opinion.

RAHMEYER, J., concurs.

DANIEL E. SCOTT, Chief Judge, dissenting.

I respectfully dissent. The court finds the "Mechanical, Electrical or Pressure Systems Breakdown" endorsement does not merely add such coverage; it also boosts the policy limits for fire, windstorm, hail, and every other insured risk. By analogy, my basic $100,000 homeowner's policy pays nothing if a power surge ruins my TV and computers. Under the principal opinion, if I insure those via the endorsement in this case, I luck into doubling my other policy limits as well.[1]

I have several concerns. First, Appellants' fire coverage did not stem from the "specified causes of loss" definition, but from the policy's obligation to "pay for direct physical loss ... caused by or resulting from any Covered Cause of Loss,"[2] the latter being risks not excluded or limited by the policy.[3] "Specified causes of loss," by contrast, are *exceptions* to the policy's exclusions—none applicable here—for damage due to rust, fungus, smog, bird nesting, etc.[4] The principal opinion misses the critical distinction between "covered" and "specified" causes of loss.

Second, and more broadly, I think the principal opinion endangers an oft-used and reasonable method of revising contracts and complex writings. Our legislature, for example, can amend a statute by passing a bill that adds a word to the end of one line, removes a clause and punctuation from the next, and makes other line-by-line changes to the existing text. Commonly, however, legislative bills delete and replace entire statutory sections with new sections incorporating all the changes, a process that presumably reduces the risk of error.

As this case illustrates, insurers use the same process to amend policies by endorsement. I think the principal opinion unwittingly punishes this by potentially doubling the insurer's exposure solely, in that opinion's words, because:

Nothing in the endorsement indicated that any of the identical specified causes of loss were to be excluded from the endorsement's coverage because they were already covered in the policy. An ordinary person of average understanding could reasonably construe that *since "fire" was listed in both the policy and the endorsement, there was additional coverage.* [my emphasis]

Again, "specified causes of loss" are contractually irrelevant to this case. But even if they applied, the endorsement expressly says its list of "specified losses" *deletes and replaces* the base policy's list.[5]

1. Although Appellants claim they meant to increase their coverage, subjective intent is irrelevant under the principal opinion, which finds additional coverage from the policy's four corners as a matter of law.

2. Building and Personal Property Coverage Form, Section A., titled "COVERAGE."

3. Causes of Loss—Special Form, Section A., titled "COVERED CAUSES OF LOSS."

4. Causes of Loss—Special Form, Section B.2 ("But if an excluded cause of loss that is listed in 2.d. (1) through (7) results in a 'specified cause of loss'... we will pay for the loss or damage caused by that 'specified cause of loss.'"). Exclusions 2.d. (1) through (7), as noted above, include losses caused by rust, fungus, smog, bird nesting, etc.

5. Consider the principal opinion's analysis on a comparable attempt to *narrow* a policy's scope. Assume an endorsement that "deleted

For all these reasons, I believe no reasonable policyholder would think this endorsement did other than its title and language in context suggest.

In summary, the principal opinion hinges on a policy definition inapplicable to this loss. It also, in my opinion, adds risk to a common and legitimate way of amendment, and may subject many policies and endorsements to similar attacks. I have found no cases with comparable results or reasoning. I do not think we should be among the first to so hold.

---

and replaced" this base policy's covered losses with an otherwise identical list omitting "hail." By still treating the original list as part of the policy, and not "deleted" as the endorsement requires, hail still may be covered and all else double-covered.