Lonnell WARE, a minor, and Renese Ware, Plaintiffs/Appellants,

v.

GEICO GENERAL INSURANCE COMPANY, Defendant/Respondent.

No. ED 80304.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 28, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 2002.

Gregory G. Fenlon, Law office of Godfrey & Fenlon, St. Louis, MO, for Appellant.

Kevin Bradley Behrndt, Law firm of Danna McKitrick, Clayton, MO, for Respondent.

SHERRI B. SULLIVAN, P.J.

### Introduction

Lonnell Ware (Lonnell)[1] and Renese Ware (Renese) (collectively Appellants) appeal from a trial court Order and Judgment (Judgment) entered in favor of Geico General Insurance Company (Geico) on Appellants' Petition For Underinsured Motorist Coverage (Petition). We reverse and remand.

### Factual and Procedural Background

The parties waived a trial by jury and submitted the case to the trial court upon a joint stipulation of facts, which included the following. Lonnell, as a passenger, was involved in a three-car motor vehicle collision that caused a severe closed head injury resulting in brain damage to Lonnell, among other injuries. Lonnell's medical bills were in excess of $125,000. The three drivers were deemed negligent in causing the collision, and they settled a lawsuit with Appellants for all insurance policy limits, totaling $125,000 and exhausting all personal liability coverages of the drivers.

Lonnell is the son of Renese. At the time of the collision, Lonnell was sixteen years old and residing with Renese. Also at the time of the collision, Renese held a "Missouri Family Automobile Insurance Policy" (Policy) that was in full force and effect with Geico. The Policy contained an Underinsured Motorist Coverage (UMC) section. The Policy limit for UMC was

---

1. Because Appellants share the same last name, when referring to them individually, we refer to them by their respective first names to avoid confusion. We intend no disrespect to Appellants.

$100,000 per person. Subject to the terms and conditions of the Policy, Lonnell was an insured and covered person under the Policy. At the time of the collision, Lonnell was occupying a motor vehicle not owned by him or a relative and that was not described in the declarations of the Policy.

Appellants made a demand of Geico for the UMC limit of $100,000 under the Policy. Geico denied the claim for UMC for the following reasons:

(1) The limit of liability shall be reduced by all sums paid because of the Bodily Injury by or on behalf of the persons or organizations who may be legally responsible;

(2) There is no valid underinsured motorist injury claim because the sums paid by the underlying tortfeasors who may be legally responsible exceeds the underinsured motorist policy limits, and;

(3) Because the other insurance clause does not provide [UMC] in excess of liability insurance, but of available underinsured motorist injury insurance.

Subsequently, Appellants filed their Petition against Geico to which Geico filed an Answer. After the trial court entered its Judgment, Appellants filed a Motion for Reconsideration of Judgment to which Geico filed a Response. The trial court denied Appellants' motion.

The relevant provisions of the UMC section of the Policy are as follows:

LIMIT OF LIABILITY

. . .

4. The most we will pay is the amount of damage sustained by an insured for bodily injury less the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury.

. . .

However, the limit of liability shall be reduced by all sums:

1. paid because of the bodily injury by or on behalf of the persons or organizations who may be legally responsible;

. . .

OTHER INSURANCE

When an insured is occupying a motor vehicle not owned by the insured or a relative and which is not described in the declarations of this policy, this insurance is excess over any other insurance available to the insured and the insurance which applies to the occupied motor vehicle is primary.

In its Judgment in favor of Geico, the trial court found:

[T]he "Other Insurance" provision does not give an impression that coverage is provided to the insured over and above a tortfeasor's insurance. This provision refers only to the insurance available to plaintiff as the insured, and does not refer to "other collectible insurance," which, if included, would create ambiguity.

*Standard of Review*

In a court-tried case, we will affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In a case tried on stipulated facts, the only issue on appeal is whether the trial court drew the proper legal conclusions from the stipulated facts. *State Farm Mut. Auto. Ins. Co. v. Sommers,* 954 S.W.2d 18, 19 (Mo.App. E.D.1997). The interpretation of the meaning of an insur-

ance policy is a question of law. *Windsor Ins. Co. v. Lucas,* 24 S.W.3d 151, 153 (Mo. App. E.D.2000). We independently evaluate the trial court's conclusions of law. *Mullenix–St. Charles Properties, L.P. v. City of St. Charles,* 983 S.W.2d 550, 555 (Mo.App. E.D.1998).

## Discussion

Appellants' point on appeal argues that the trial court erred in concluding that the "Other Insurance" provision of the UMC section of the Policy was not ambiguous because the term "excess" in the provision without express limitation has ambiguous meaning to laypersons.

When interpreting the language of an insurance policy, we give the language its plain meaning. *Lang v. Nationwide Mut. Fire Ins. Co.,* 970 S.W.2d 828, 830 (Mo.App. E.D.1998). The plain meaning is the meaning that would ordinarily be understood by the layperson who bought and paid for the policy. *Goza v. Hartford Underwriters Ins. Co.,* 972 S.W.2d 371, 374 (Mo.App. E.D.1998). Words in an insurance policy are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean, but rather what a reasonable layperson in the position of the insured would have thought they meant. *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri,* 992 S.W.2d 308, 316 (Mo.App. E.D.1999).

Whether an insurance policy is ambiguous is a question of law. *Niswonger,* 992 S.W.2d at 316. We may not create an ambiguity where none exists or rewrite a policy to provide coverage for which the parties never contracted, absent a statute or public policy requiring coverage. *Lang,* 970 S.W.2d at 830.[2] An ambiguity arises when there is duplicity, indistinctness or uncertainty in the meaning of the words used in the insurance policy. *Id.* Absent an ambiguity, an insurance policy must be enforced according to its terms. *Id.* The fact that the parties disagree on the interpretation of a term in an insurance policy does not render the term ambiguous. *Id.* Where a term of an insurance policy is ambiguous, it is construed against the insurer. *Goza,* 972 S.W.2d at 374. The reasons for these rules of construction are that insurance is designed to furnish, not defeat, protection to the insured and the insurance company is in the best position to remove ambiguity from a contract. *Krenski v. Aubuchon,* 841 S.W.2d 721, 729–730 (Mo.App. E.D.1992).

Appellants argue that the "Other Insurance" provision provides coverage in excess of the insurance collected from the three driver tortfeasors whereas Geico maintains that the "Limit of Liability" provisions reduce Geico's liability to zero in light of the $125,000 paid by the tortfeasors. We agree with Appellants, as we find the "Other Insurance" provision similar to those found to be ambiguous in *Goza,* 972 S.W.2d at 373 and *Zemelman v. Equity Mut. Ins. Co.,* 935 S.W.2d 673, 675 (Mo.App. W.D.1996).[3]

A reasonable layperson in the position of Appellants may have understood the "Other Insurance" provision to provide coverage over and above that furnished by the

---

**2.** In Missouri, there is no statute or public policy requiring UMC. *Id.* at 832.

**3.** The relevant clause of the "Other Insurance" provisions found to be ambiguous in *Goza* and *Zemelman* provided:

However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance. We are unpersuaded by *Geico's* distinction between "collectible" insurance in these provisions and "available" insurance in our provision.

tortfeasors' insurance under the circumstances laid out in the provision. Further, reading the "Other Insurance" provision in conjunction with the "Limit of Liability" provisions creates an ambiguity. The method for calculating Geico's limit of liability is in conflict with the "Other Insurance" provision because it is uncertain how the term "excess" in the provision applies to the calculation of coverage.

For example, a reasonable reading of the provisions could produce the following scenarios. Assume a plaintiff has $100,000 UMC, a tortfeasor has $125,000 liability coverage, and that damages are in excess of $200,000. After reading the "Other Insurance" provision, a plaintiff could reasonably believe that his $100,000 UMC would apply to the excess $75,000 in damages after receiving $125,000 from the tortfeasor's insurer. In comparison, assume a plaintiff has $100,000 UMC, a tortfeasor has $125,000 liability coverage, and that damages are in excess of $250,000. After reading the "Other Insurance" provision, a plaintiff could reasonably believe that his $100,000 UMC would apply to the excess $125,000 in damages after receiving $125,000 from the tortfeasor's insurer. However, the plaintiff would only receive the Policy limit of $100,000 as defined by the "Limit of Liability" provisions.

Further, a reasonable layperson may have concluded that the "Other Insurance" provision prevailed over the preceding and apparently conflicting "Limit of Liability" provisions in that the "Other Insurance" provision applies to a specific situation setting it apart, namely, when an insured is occupying a motor vehicle not owned by the insured or a relative and which is not described in the declarations of this policy. Additionally, we find that the clause "the insurance which applies to the occupied motor vehicle is primary" refers to relative positions of liability, the order of insurer liability, not to relative amounts of liability.

Accordingly, we find that the term "excess" in the "Other Insurance" provision of the Policy could reasonably be interpreted to provide coverage over and above that available from the tortfeasors, and thus the provision is ambiguous.

### Conclusion

We conclude that the trial court erroneously applied the law. The Judgment of the trial court is reversed and remanded with instructions (1) to take evidence as to the specific amount of Lonnell's medical bills and to distribute the UMC to cover the difference between $125,000 and the amount, up to the Policy limit of $100,000; and (2) to determine the amount, if any, of prejudgment interest to which Appellants are entitled.

LAWRENCE G. CRAHAN, J., and MARY R. RUSSELL, J., concur.