Tamara SEECK, Appellant,

v.

**GEICO GENERAL INSURANCE CO., Respondent.**

No. SC 87995.

Supreme Court of Missouri,
En Banc.

Jan. 30, 2007.

Gary A. Growe and Andrew J. Scavotto, St. Louis, for Appellant.

Kevin B. Behrndt, St. Louis, for Respondent.

Leland F. Dempsey, Kansas City, for Amicus Curiae Missouri Association of Trial Attorneys.

Susan Ford Robertson and Emily W. Little, Columbia, for Amicus Curiae Missouri Organization of Defense Lawyers.

LAURA DENVIR STITH, Judge.

Tamara Seeck appeals the trial court's entry of summary judgment in favor of Geico General Insurance Company in Ms. Seeck's suit seeking $50,000 in underinsured motorist coverage under her Geico policy. The trial court held that the policy did not provide coverage. This Court disagrees. Geico's argument that other policy provisions do not appear to provide coverage is not dispositive because the policy's other insurance clause would cause an ordinary insured of average understanding to believe that excess coverage exists where, as here, the insured's injuries exceed the coverage provided by the primary insurance on the occupied motor vehicle. At a minimum, this creates an ambiguity in the policy that, under settled Missouri law, must be resolved in favor of the insured. The judgment is reversed, and the case is remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Seeck sustained serious cervical spine injuries as a passenger in a motor vehicle that was rear-ended by a negligent motorist. Her injuries are permanent, chronic, and progressive. The negligent driver who caused the collision was insured with Farmers Insurance Group.

Farmers tendered a release and settlement agreement resolving Ms. Seeck's claims against Farmers and the negligent driver for $50,000, the full amount of coverage available under the Farmers policy. Ms. Seeck and Farmers signed the release and settlement agreement that included a specific, handwritten clause that expressly reserved her right to seek underinsured motorist benefits from her own insurance carrier, Geico.

Ms. Seeck then filed a claim seeking coverage up to the $50,000 limit provided in the "Underinsured Motorist Coverage" (UMC) policy amendment to her Geico policy. When Geico refused coverage, Ms. Seeck filed the instant suit. The parties stipulated that the policy would pay Ms. Seeck $50,000 if the policy's underinsured motorist coverage applied, but Geico argued it did not apply. After briefing and argument, the trial court entered summary judgment for Geico. Ms. Seeck appealed to the Court of Appeals, Eastern District, which transferred the case to this Court after opinion.[1]

## II. DISCUSSION

### A. Standard of Review

---

1. The trial court sustained Geico's motion for summary judgment without further explanation. On appeal, Geico argues that entry of summary judgment was correct both because the policy allegedly unambiguously does not provide coverage and because the settlement and release Ms. Seeck signed with the tortfeasor obligates her to reimburse the tortfeasor in the full amount of her Geico recovery when and if Geico recovers the coverage amount

■ Whether to grant summary judgment is an issue of law that this Court determines *de novo*. *American Std. Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89 (Mo. banc 2000). The interpretation of an insurance policy is a question of law that this Court also determines *de novo*. *Martin v. United States Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999); *McCormack Baron Mgt. Servs., Inc. v. American Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999). In construing the terms of an insurance policy, this Court applies "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance," *id.*, and resolves ambiguities in favor of the insured. *Martin*, 996 S.W.2d at 508.

### B. Ambiguity of the Geico Policy.

■ The key issue before the Court is whether the Geico policy is ambiguous. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. banc 1997). Absent an ambiguity, an insurance policy must be enforced according to its terms. *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991). If, however, "policy language is ambiguous, it must be construed against the insurer." *Gulf Ins. Co.*, 936 S.W.2d at 814.

The excess or other insurance clause that Ms. Seeck argues provides coverage declares, in pertinent part:

When an insured is occupying a motor vehicle not owned by the insured ... this insurance is excess over any other insurance available to the insured and the insurance which applies to the occupied motor vehicle is primary.

This provision expressly states that the Geico policy provides "excess" coverage over "any" other insurance available to the insured and that it is excess to any "primary" coverage provided by insurance that applies to the occupied motor vehicle. Ms. Seeck recovered $50,000 from Farmers under the tortfeasor's insurance policy covering the occupied motor vehicle. She now makes a claim on Geico to provide excess coverage to this primary insurance.

This Court agrees that an "ordinary person of average understanding," *McCormack Baron*, 989 S.W.2d at 171, would interpret the excess insurance clause to mean that since Ms. Seeck has obtained recovery under the primary Farmers insurance policy applicable to the occupied vehicle but has additional damages, she is entitled to coverage under the excess insurance clause of her own Geico policy.

Geico argues that this Court should not reach this issue, but rather should hold that the tortfeasor's vehicle does not come within the definition of "underinsured motor vehicle" in the Geico policy, which defines an underinsured vehicle as one whose "limit for bodily injury liability is less than the limit of liability for this [the Geico] coverage." Similarly, Geico argues, there should be no coverage because the policy's limit of liability clause provides that recovery under the policy will be reduced by the amounts paid by insurance carried by the party at fault for the accident.[2] Therefore,

---

paid to Ms. Seeck from the tortfeasor in subrogation. Geico no longer asserts, as it did below, that Ms. Seeck's failure to obtain its consent to the Farmers settlement waived any right to coverage even though Geico does not assert it was prejudiced by the lack of notice.

**2.** The limit of liability section of Seeck's Geico policy reads, in pertinent part, as follows: The most we will pay is the amount of damage sustained by an insured for bodily injury less the amount paid to the insured by or for any person or organization who

as both the Farmers and the Geico policy provided $50,000 in insurance coverage, Geico argues, its underinsured motorist coverage never came into effect, the limits of liability provision reduced coverage to nothing, and this Court should not consider the meaning of the excess insurance clause.

Geico's argument is inconsistent with well-settled Missouri law requiring a court not to interpret policy provisions in isolation but rather to evaluate a policy as a whole. *See, e.g., Central Sur. & Ins. Corp. v. New Amsterdam Cas. Co.,* 359 Mo. 430, 222 S.W.2d 76, 78 (1949). As this Court held in *Lutsky v. Blue Cross Hosp. Serv., Inc.,* 695 S.W.2d 870, 875 (Mo. banc 1985), "[i]f a contract promises something at one point and takes it away at another, there is an ambiguity."

*Ware v. Geico General Ins. Co.,* 84 S.W.3d 99, 102–03 (Mo.App. E.D.2002), interpreted the meaning of a Geico policy that is identical in all material respects to the policy in this case. *Ware* evaluated the excess or other insurance clause, the limit of liability, and the definition of underinsured motor vehicle and concluded that "[a] reasonable layperson in the position of Appellants may have understood the 'Other Insurance' provision to provide coverage over and above that furnished by the tortfeasor's insurance." *Ware,* 84 S.W.3d at 102–03. This compelled the inescapable conclusion that reading the policy as a whole "creates an ambiguity." *Id.* at 103.

*Ware* is consistent with the many other court of appeals cases holding that conflicts between underinsured motorist policy limits, policy definitions, and the provision of excess coverage in an excess or other insurance clause renders an insurance policy ambiguous. *See Goza v. Hart-*

*ford Underwriters Ins. Co.,* 972 S.W.2d 371, 374 (Mo.App. E.D.1998); *Jackson v. Safeco Ins. Co.,* 949 S.W.2d 130, 135–36 (Mo.App. S.D.1997); *Krenski v. Aubuchon,* 841 S.W.2d 721, 729–31 (Mo.App. E.D. 1992); *Zemelman v. Equity Mut. Ins. Co.,* 935 S.W.2d 673 (Mo.App. W.D.1996). As the court of appeals succinctly stated in *Zemelman:*

> Where there is an "excess" or "other insurance" clause that provides the underinsured coverage is excess over all other collectible insurance at the time of the accident, a court may find that language is ambiguous when read with the limit of liability or the definition of underinsured motorist coverage if the other insurance clause may reasonably be understood to provide coverage over and above that collected from the tortfeasor.

935 S.W.2d at 677–78. This is precisely the case here.

Geico urges that all of these court of appeals cases conflict with *Rodriguez v. General Accident Ins. Co.,* 808 S.W.2d 379, 382 (Mo. banc 1991), in which this Court held that similar definitional and policy limits clauses unambiguously did not provide coverage. But, as *Zemelman* noted, in *Rodriguez,* "only the underinsured motor vehicle definition and the limit of liability language were held unambiguous and the court did not address the issue of an excess insurance clause." *Zemelman,* 935 S.W.2d at 678. *Rodriguez,* therefore, is not determinative here, for Ms. Seeck's policy also contained the excess insurance clause set out above, and that clause, too, must be construed in determining whether the policy would be interpreted by a person of average understanding to provide coverage. It is this third clause, the excess or other insurance provision, that ren-

may be held legally liable for the bodily injury.... However, the limit of liability shall be reduced by all sums: ... paid

because of the bodily injury by or on behalf of the persons or organizations who may be legally responsible....

ders the policy ambiguous. *Zemelman,* 935 S.W.2d at 678 ("where this third clause exists and is raised as ambiguous . . . an ambiguity arises in the 'Other Insurance' clause").

■ This Court reaffirms the principles set out in *Ware, Zemelman,* and the other cases cited. Where, as here, an other insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous, and the ambiguity will be resolved in favor of coverage for the insured.[3]

## C. The Release of the Tortfeasor Did Not Waive Coverage.

■ Geico urges that the release and settlement agreement that Ms. Seeck signed, releasing the tortfeasor from all liability, defeats her right to recover because it creates a "circularity" or "financial wash." In support, Geico invites the Court to accompany it on its hypothetical future pursuit of its claimed subrogation rights and the effect such pursuit, if successful, would have on Ms. Seeck's financial position. More specifically, Geico contends that it has a subrogation right under its policy with Ms. Seeck that permits it to sue the tortfeasor to recover the $50,000 it must pay to Ms. Seeck when she is entitled to coverage. In the event Geico is able to exercise its alleged subrogation rights and recover from the tortfeasor, Geico claims

that Ms. Seeck will then be contractually obligated to reimburse the tortfeasor for Geico's recovery because the release and settlement provides that she will "reimburse and indemnify all released parties for any amounts which any insurance carriers . . . may recover from them." Geico claims, therefore, that if Ms. Seeck recovers, Geico will have to pay her $50,000 in insurance coverage, the tortfeasor will have to pay Geico $50,000 when it successfully pursues its subrogation rights, and Ms. Seeck will have to pay the tortfeasor $50,000 based on the release and settlement agreement's reimbursement clause, leaving all parties in their current positions.

In response, Ms. Seeck urges that none of Geico's rights were affected by the release and settlement since Geico was expressly excluded from the release. Further, the claimed "circularity" depends on the resolution of matters that are not properly before this Court (e.g., the validity of Geico's subrogation rights, its willingness and ability to recover from the tortfeasor, and the extent of Geico's exclusion from the release).

While the parties or their amici have briefed the issue,[4] no party has demonstrated to this Court how the validity of Geico's subrogation rights would affect the only issue in this case: whether Ms. Seeck is entitled to coverage under her Geico

---

3. This is not to say that the presence of an other insurance clause always renders a policy ambiguous. Such a clause can be clearly written and enforceable if not contradicted or rendered ambiguous by other clauses of the contract. *See, e.g., Melton v. Country Mutual Ins. Co.,* 75 S.W.3d 321, 324 (Mo.App. E.D. 2002). It was up to Geico to include clear and unambiguous language in its policy. It failed to do so here.

4. Whether Geico can exercise valid subrogation rights under this policy is an issue that inspired amicus Missouri Association of Trial

Attorneys (MATA) and amicus Missouri Organization of Defense Lawyers (MODL) to file briefs. Ms. Seeck and MATA urge that Geico's claimed subrogation rights are invalid because they violate the common law rule against assignment of personal injury claims, which has been abrogated for uninsured motorist coverage but not, MATA contends, for underinsured motorist coverage. Geico and MODL contend that, to the contrary, Geico has valid subrogation rights in the policy that would entitle it to pursue recovery against the tortfeasor.

policy. The resolution of this question could impact Geico's attempt to recover from the tortfeasor, but any dispute between Geico and the tortfeasor is not presently before this Court. Therefore, the validity of Geico's claimed subrogation rights is not ripe in this dispute. *See Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. banc 2002) (noting that an insurer's right to subrogation arises when it has paid the insured for a covered loss).

■ Similarly, the import and consequences of the release and settlement between Ms. Seeck and the tortfeasor is also not before this Court, as Geico was not a party to the release. As a non-party to the release, Geico has standing to litigate the meaning of its terms only if it could demonstrate that it is a third-party beneficiary of the release. As this Court set out in detail in the recent cases of *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006), and *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 358 (Mo. banc 2006), an agreement must "clearly express an intent to benefit" a third-party in order for the third-party to attain third-party beneficiary status. In the absence of an "express declaration of that intent [to benefit the third-party], there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves." *Id.* at 358.

In this case, the release contains no express declaration of intent to benefit Geico. To the contrary, Ms. Seeck's addition of a specific exemption permitting her to pursue her claim against Geico expresses a plainly opposite intention. Geico is not, therefore, a third-party beneficiary of the release. For this reason, Geico has no standing to ask this Court to interpret the meaning of terms in the release. To the extent Geico tries to anticipate issues that may arise when and if it attempts to collect on its alleged subrogation interest from the tortfeasor, those issues are not ripe in this suit, which, by the parties' stipulation, is solely between the insurer and the insured on the issue of coverage. *See Buechner v. Bond*, 650 S.W.2d 611, 614 (Mo. banc 1983) ("Ripeness does not exist when the question rests solely on a probability that an event will occur").

## III. CONCLUSION

For the reasons set forth above, the Court finds that the Geico policy is ambiguous. Therefore, Ms. Seeck is entitled to coverage under the policy and the judgment of the trial court is reversed, and the case is remanded.

WOLFF, C.J., TEITELMAN, LIMBAUGH, RUSSELL and WHITE, JJ., concur.

PRICE J., not participating.