

# Missouri Court of Appeals

## Southern District

### Division One

JOSEPH G. FARIES,                    )
                                     )
    Plaintiff-Appellant,             )
                                     )
vs.                                  )        No. SD36884
                                     )
UNITED SERVICES AUTOMOBILE           )        **Filed:  July 14, 2021**
ASSOCIATION, a/k/a USAA,             )
                                     )
    Defendant-Respondent.            )

APPEAL FROM THE CIRCUIT COURT OF WAYNE COUNTY

Honorable Megan K. Seay, Circuit Judge

## REVERSED AND REMANDED WITH DIRECTIONS

Joseph G. Faries ("Appellant") appeals from an amended judgment that incorporated a previous interlocutory order granting United Services Automobile Association ("USAA") partial summary judgment that a spray foam trailer was "custom equipment" and not "original manufacturer equipment" for purposes of physical damage

(i.e., comprehensive and collision) coverage.[1]  Appellant argues that the spray foam

equipment installed by Spray Foam Systems of Georgia ("SFSG") on a Horton Hauler

trailer should be treated the same as component parts and options installed by the

manufacturers of the truck and passenger vehicles shown on the declarations pages of the

policy – for example, an engine manufactured by Cummins Diesel that was installed by

Dodge in a Dodge truck that was shown on a declarations page of the policy.  We agree.

We reverse the trial court's amended judgment, and remand for further proceedings

consistent with this opinion.

## Standard of Review[2]

"Summary judgment is appropriate when there is no genuine issue of material

fact, and the moving party is entitled to judgment as a matter of law.  Rule 74.04(c); *ITT

Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 381–82 (Mo.

banc 1993)."  **Shelter Mutual Insurance Company v. Bedell**, 459 S.W.3d 524, 526

(Mo.App. S.D. 2015).  Further,

> [w]hether to grant summary judgment is an issue of law that this Court
> determines *de novo*. *American Std. Ins. Co. v. Hargrave*, 34 S.W.3d 88,

---

[1] The interlocutory order also denied a motion for partial summary judgment filed by Appellant seeking the opposite interpretation, and ruled that USAA "was not liable to [Appellant] for vexatious refusal to pay [Appellant's] claim."

Following entry of the interlocutory order, a bench trial occurred at which evidence relevant to damages was presented.  The amended judgment also included the trial court's determination of damages based on the trial court's interpretation of the insurance contract in the interlocutory order.

[2] On appeal from the trial court's amended judgment, we review the trial court's interlocutory order granting USAA partial summary judgment under the rules for appellate review of summary judgments. *See* section 512.020(5), RSMo 2016 ("[A litigant in a civil case may take an appeal] from any . . . [f]inal judgment in the case . . .; but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case."); *Quick v. Anderson*, 503 S.W.3d 242, 248-49 (Mo.App. W.D. 2016) (standard of review and discussing section 512.020(5) in the context of the review of a grant of partial summary judgment); *State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397 (Mo. banc 2016) (discussing section 512.020(5) in the context of an interlocutory order denying a motion to intervene); and *Hootselle v. Missouri Department of Corrections*, No. SC98252, 2021 WL 2211675, at *6-14 (Mo. banc June 1, 2021) (applying the rules for appellate review of summary judgments to review of the grant of a partial summary judgment in an appeal from a subsequent final judgment).

89 (Mo. banc 2000). The interpretation of an insurance policy is a question of law that this Court also determines *de novo*. *Martin v. United States Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999); *McCormack Baron Mgt. Servs., Inc. v. American Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999).

*Seeck v. Geico General Insurance Company*, 212 S.W.3d 129, 132 (Mo. banc 2007).

"In general, the denial of a motion for summary judgment is not a final judgment and cannot be reviewed on appeal." *Malin v. Missouri Association of Community Task Forces*, 605 S.W.3d 419, 424 n.6 (Mo.App. W.D. 2020). "'If, however, the merits of the denied motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party, the denial of a motion for summary judgment may be reviewed on appeal.'" *Id.* (quoting *Eldridge v. Columbia Mut. Ins. Co.*, 270 S.W.3d 423, 425 (Mo.App. W.D. 2008) (internal quotations and citation omitted)).

## Applicable Rules for Interpreting an Insurance Policy

As the Supreme Court explained in *Seeck*: "In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, . . . and resolves ambiguities in favor of the insured." *Seeck*, 212 S.W.3d at 132 (internal quotes and citations omitted). The Western District of this Court has elaborated further on these principles stating:

> "To determine whether an insurance policy provides coverage, we look to the insurance contract itself." *Long [v. Shelter Ins. Companies]*, 351 S.W.3d [692,] 701 [(Mo.App. W.D. 2011)]. "Courts are not to interpret the provisions of an insurance policy in isolation but rather are to examine the policy as a whole." *Wasson [v. Shelter Mut. Ins. Co.]*, 358 S.W.3d [113,] 121 [(Mo.App. W.D. 2011)].
> . . . "The policy 'must be given effect according to the plain terms of the agreement, consonant with the reasonable expectations, objective, and intent of the parties.'" *Wasson*, 358 S.W.3d at 120 (citing *Long*, 351 S.W.3d at 701). "We look to definitions in insurance policies to guide our

3

interpretation, but when words or phrases are not defined in the policy, we look to the plain meaning of words and phrases as it would have been understood by an ordinary person of average understanding when buying the policy." *Id*. (citing *Jones v. Mid–Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009)).

***Warden v. Shelter Mutual Insurance Company***, 480 S.W.3d 403, 405-06 (Mo.App. W.D. 2015).

With this standard of review and these applicable rules of interpretation in mind, we look to the uncontroverted material facts including the policy. Based on USAA's statement of uncontroverted material facts, Appellant's response, and USAA's reply, the uncontroverted material facts[3] were:

    1. In 2014, [Appellant] purchased a Horton Hauler trailer and spray-foam-system package from [SFSG].

    2. The trailer itself was manufactured by Horton Haulers [sic].

    3. The trailer came to [Appellant] with spray-foam-system equipment permanently mounted to the trailer.

    4. The spray-foam-system equipment was bolted to the trailer and not readily removable.

    5. None of the spray-foam-system equipment was manufactured by Horton Hauler.

    6. SFSG purchased the Horton Hauler trailer and then assembled all of the other spray-foam-system equipment, which is manufactured by other manufacturers, into a final package, which [Appellant] purchased.

    . . . .

---

[3] Record references supporting the uncontroverted material fact have been omitted.

4

8. [Appellant's] Horton Hauler trailer was damaged by fire in 2016.

9. At the time the Horton Hauler trailer was damaged, it was listed on the declarations page of a personal automobile policy with USAA.

. . . .

11. [Appellant] seeks compensation for the loss of the Horton Hauler trailer and spray-foam-system equipment under Part D, pertaining to comprehensive physical damage coverage, of the insurance policy.

Appellant added the following response and additional uncontroverted material facts:

10. At the time the Horton Hauler trailer was damaged, the spray-foam-system equipment was not listed on the declarations page of the personal automobile policy with USAA.

Response: Denied. The listing for the Horton trailer on the declarations page includes "Trade Name" of "Horton V", "Model" of "HY820TA" and a vehicle identification number. Although each individual option or piece of equipment is not separately stated, all of the options and equipment on the trailer are intended to be included just as they are with the six other vehicles are listed on the declarations page.

. . . .

1. [Appellant] did not separately purchase the Horton Hauler trailer which is the subject of this suit. He purchased a complete spray foam package from Spray Foams Systems. The hull of that package was the Horton Hauler trailer.

5

2. [Appellant] paid Spray Foam Systems one price for the entire package, which included the trailer, spray system, generator, etc., comprising everything it takes to have a walk away system.

3. The trailer was listed on the declarations page of the policy as [V]ehicle 14.

4. [Appellant] paid a premium of $47.96 for the time period of April 15, 2016 through October 15, 2016, for Part D Comprehensive Loss coverage on Vehicle 14.

5. Vehicle 7 on the same policy is a [1995] livestock trailer.

6. [Appellant] paid a premium of $00.46 for the time period of April 15, 2016 through October 15, 2016, for Part D Comprehensive Loss coverage on Vehicle 7, the livestock trailer.

7. [Appellant] added the Horton Hauler trailer to his policy via telephone with USAA. . . .

In relevant part, the policy provided:

**PART D – PHYSICAL DAMAGE COVERAGE**

**DEFINITIONS**

. . . .

C. "**Custom equipment**" means equipment, furnishings and parts permanently installed in or upon **your covered auto**, other than:

1. Original manufacturer equipment, furnishings or parts; [and]

2. Any replacement of original manufacturer equipment, furnishings or parts with other equipment, furnishings or parts of like kind and quality[.]

. . . .

G. "**Your covered auto**" as used in this Part includes:

1. **Custom equipment**, up to a maximum of $5,000, in or on **your covered auto**. . . .

*Potential Disputed Material Facts Not Considered*

The parties' "intent[ion]" appears to be a disputed material fact. Appellant also asserted in his response and statement of additional unconverted material facts that a "USAA representative [told him over the telephone] that [the Horton Hauler trailer] would be covered for $55,000.00." USAA "objected" to this fact as "hearsay." Ordinarily, these disputed material facts would defeat summary judgment, but Appellant did not plead in his petition that (1) USAA misrepresented the property insured, or (2) USAA was estopped from limiting the physical damage coverage under the policy to the property specifically listed on the declarations page. Appellant also does not raise or challenge the existence of any disputed material fact in this appeal, and, in fact, affirmatively asserted in suggestions opposing USAA's request for oral argument that: "This appeal involves exclusively legal issues regarding the interpretation of an insurance policy. Cross motions for partial summary judgment were ruled exclusively on legal grounds, with neither side arguing that disputed facts precluded summary judgment."

*Discussion*

All three of Appellant's points relied on rest on Appellant's contention that "the spray foam equipment installed in the trailer was 'original manufacturer equipment'" and excluded from the phrase "[c]ustom [e]quipment" "within the meaning of the policy." We agree. The uncontroverted material facts are that Appellant purchased a spray foam system package from SFSG. The trailer itself, that was the base of the permanently attached spray foam system, was manufactured by Horton Hauler. None of the spray

7

foam equipment was manufactured by Horton Hauler. All of the equipment was attached by SFSG, Appellant did not add any equipment or "customize" the trailer in any other fashion.

The spray foam vehicle is Vehicle 14 shown on the Declarations. As noted in the motions for summary judgment and responses, on the declarations page there is also listed Vehicle 7, a 1995 livestock trailer with a premium of $00.46 for comprehensive and $3.01 for collision for a six-month period. On the renewal declarations pages of the insurance policy for the policy period that included the date of loss, the trailer was listed as Vehicle 14, and described as a 2014 "Horton V" that was insured under Part D (physical damage coverage) for comprehensive loss and for collision loss. A separate premium of $47.96 was charged for the comprehensive coverage, and $56.40 for the collision coverage for a six-month period.

The policy defined "**your covered auto**" to mean:

1.  Any vehicle shown on the Declarations.
2.  Any **newly acquired vehicle**.
3.  Any **trailer** you own.

Under the Exclusions to Part D of the policy for physical damage, however, loss to an owned trailer "that is not shown on the Declarations" is excluded. In addition, the trailer was not a "**newly acquired vehicle**" as Appellant acquired it more than one year before the loss. As a result, the only relevant vehicle included in "**your covered auto**" for purposes of Part D in this case is "[a]ny vehicle shown on the Declarations" page. It then follows that "**custom equipment**" under Part D "means equipment . . . permanently installed in or upon [any vehicle shown on the Declarations], other than . . . [o]riginal manufacturer equipment . . . [and] [a]ny replacement of original manufacturer equipment

. . . with other equipment . . . of like kind and quality." In this case, SFSG was the original manufacturer of that vehicle and Horton Hauler was simply the manufacturer of a component part of the spray foam trailer. Because it was the component with a vehicle identification number, it was listed as a Horton Hauler trailer on the declarations page. Appellant added no custom equipment to the vehicle.

This common sense understanding of the coverage for the entire vehicle is reinforced by the premiums collected by USAA. On a 1995 livestock trailer (Vehicle 7) the premium was $00.46 for a six-month period for comprehensive coverage. The premium on the spray foam system, which does not have a driving motor and which USAA claims is only insured up to the value of the naked trailer plus five thousand dollars ($5,000), was $47.96 for a six-month period for comprehensive loss.[4] It is clear from the facts and the policy that the only conclusion to draw is that USAA was insuring the spray foam vehicle.

Appellant's points are granted; the trial court's amended judgment is reversed; the trial court is directed to assess damages under the insurance contract as the actual cash value of the spray foam vehicle less the deductible; and the case is remanded for further proceedings consistent with this opinion.[5]

Nancy Steffen Rahmeyer, P.J. – Opinion Author

William W. Francis, Jr., J. – Concurs

Jack A. L. Goodman, J. – Concurs

---

[4] That is a premium of one hundred times the value of the livestock trailer premium. The premium for a 2014 Ram truck was only $137.96 for comprehensive loss and $136.03 for collision loss. The truck premium was only two and a half times a spray pull trailer.

[5] Including consideration of Appellant's vexatious refusal to pay count in light of our interpretation of the insurance contract.