# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-3087

_____

Mark W. Rossi, Mo Western, 4:20-cv-00411

*Plaintiff - Appellant*

John Jackson, MO Western, 4:20-cv-00496; Earl Parker, Utah, 2:20-cv-00377

*Plaintiffs*

Ronald Osborn, New Jersey, 2:20-cv-06345

*Plaintiff - Appellant*

Chance Staley, Colorado, 1:20-cv-02223; Erin Goldsmith, California Central, 2:20-cv-05722; Isabel C. Ossa, California Central, 2:20-cv-05722

*Plaintiffs*

Nolte Mehnert

*Plaintiff - Appellant*

v.

Arch Insurance Company; Out of Towne, LLC, doing business as Red Sky Travel Insurance

*Defendants - Appellees*

Alterra Mountain Company, California Central, 2:20-cv-05722; Ikon Pass, Inc., California Central, 2:20-cv-05722

*Defendants*

Does 1 - 100 inclusive, California Central, 2:20-cv-05722

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 21, 2022
Filed: February 27, 2023

_____

Before SMITH, Chief Judge, KELLY and GRASZ, Circuit Judges.

_____

KELLY, Circuit Judge.

Plaintiffs Mark Rossi, Ronald Osborn, and Nolte Mehnert appeal the district court's[1] dismissal with prejudice of their putative class action complaint against Arch Insurance Company and Out of Towne, LLC, d/b/a Red Sky Travel Insurance (collectively, Arch) for failure to state a claim. We affirm.

I.

The plaintiffs are three skiers who purchased an Ikon Pass, "a popular, multi-resort season ski pass," for the 2019–20 ski season. Each pass cost between $600 to $1,000 and provided purchasers with unlimited ski access at participating Ikon resorts in North America. Along with their Ikon Pass, the plaintiffs purchased an optional Ski Pass Preserver insurance policy from Arch.

_____

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

Relevant here, the Ski Pass Preserver policy provided coverage for "Season Pass Interruption":

> We will reimburse You . . . for the pro-rated cost of the remaining portion of the Covered Season Pass purchased . . . when You cancel the Season Pass for one of the following Unforeseen reasons:
>
> 1. Your or a Family Member's death, which occurs during the Season Pass Period;
> 2. Your or a Family Member's, covered Sickness or Injury which: a) occurs during the Season Pass Coverage Period, b) requires Medical Treatment at the time of interruption; and c) as certified by a Physician, results in medical restrictions so disabling as to prevent Your continued use of the Season Pass; or
> 3. for Other Covered Events;
>
> provided that any such covered Unforeseen reason occurs while coverage is in effect for You.

"Other Covered Events" included "You being hijacked, quarantined, required to serve on a jury . . . , [and] served with a court order to appear as a witness in a legal action in which You are not a party . . . ." "Quarantined," and the surrounding terms, were undefined.

Beginning in March 2020, after the plaintiffs purchased their passes, state and local governments issued orders, colloquially called "stay-at-home orders," to prevent the spread of COVID-19. In response to these orders, ski resorts throughout North America closed with approximately one-third of the ski season remaining.

Soon after, the plaintiffs sought reimbursement for the loss of their ski pass benefits under the policy based on the Season Pass Interruption coverage.[2] According to the plaintiffs, the stay-at-home orders and related ski resort closures

---

[2] Plaintiffs Mehnert and Osborn filed claims with Arch, while Rossi alleged that he "gave prompt notice of his claim and was told no coverage would be provided for the March 15, 2020 closure of ski resorts."

were quarantines that prevented them from using their Ikon Pass for the rest of the ski season. Yet, Arch denied their claims. The company took the position that the stay-at-home orders were not quarantines under the policy, later posting a "blanket denial" for such claims on its website.

The plaintiffs then filed complaints against Arch in several federal district courts. On October 2, 2020, the Judicial Panel on Multidistrict Litigation transferred all pending actions to the Western District of Missouri for pretrial proceedings. On February 23, 2021, the plaintiffs filed one master consolidated class action complaint on behalf of themselves and a nationwide putative class of individuals who purchased the Ski Pass Preserver policy for the 2019–20 ski season. The complaint stated four claims for relief: (1) breach of contract; (2) declaratory judgment; (3) bad faith refusal to pay under California, Colorado, and New Jersey common law; and (4) bad faith refusal to pay under Colorado statutory law.

Arch moved to dismiss the consolidated class action complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court denied the motion to dismiss under Rule 12(b)(1) but granted it under Rule 12(b)(6), dismissing the complaint with prejudice for failure to state a claim. The court determined as a matter of law that the Ski Pass Preserver policy, in relevant part, was unambiguous. The court then concluded that the plaintiffs did not plausibly allege a covered loss because the term "quarantined," as used in the policy, did not encompass stay-at-home orders that merely limited travel and activities. Because the remaining claims rested on the breach of contract claim, the court dismissed the plaintiffs' complaint. The plaintiffs now appeal.

## II.

We review de novo the district court's grant of a motion to dismiss, "accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." Simes v. Ark. Jud. Discipline & Disability Comm'n, 734 F.3d 830, 834 (8th Cir. 2013) (quotation omitted). To survive a

motion to dismiss, a plaintiff must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. We "are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017) (cleaned up).

At the motion to dismiss stage, we can consider documents "necessarily embraced by the complaint," including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (quotation omitted). Here, the Ski Pass Preserver policy and the stay-at-home and ski resort closure orders referenced in the plaintiffs' complaint qualify as such,[3] and neither side contends otherwise.

III.

A.

The first question is whether the term "quarantined" in the Ski Pass Preserver policy is ambiguous.[4] The plaintiffs contend that "quarantined," which is not

---

[3]In support of their allegations, the plaintiffs specifically reference California Executive Order N-33-20, which was issued on March 19, 2020, and directed all Californians to "stay at home or at their place of residence" to "protect public health," and Colorado Executive Order D-2020-004, which was issued on March 14, 2020, and ordered the closure of downhill ski resorts in the state in response to the spread of COVID-19.

[4]The plaintiffs, as an initial matter, contend that to obtain reversal, they need only show that their reading of the term quarantine is "a reasonable one," and if so,

defined in the policy, is ambiguous because it is capable of at least two reasonable meanings.

When, as here, federal jurisdiction is based on diversity of citizenship, "we apply state substantive law to interpret the insurance policies." Bauer v. AGA Serv. Co., 25 F.4th 587, 589 (8th Cir. 2022). The parties agree that Missouri provides the governing law. Our review of the district court's interpretation of Missouri law is de novo. Sligo, Inc. v. Nevois, 84 F.3d 1014, 1019 (8th Cir. 1996).

In Missouri, general rules of contract interpretation govern the interpretation of insurance policies. Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 160 (Mo. banc 2007). Missouri law directs us to consider an insurance policy "as a whole," rather than read policy provisions "in isolation." Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 133 (Mo. banc 2007). Where the language of an insurance policy is "clear and unambiguous," it must be enforced as written. Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins., 531 S.W.3d 508, 511 (Mo. banc 2017). If, however, we determine that a policy is ambiguous, any ambiguity must be resolved in favor of the insured. Seeck, 212 S.W.3d at 132.

"An insurance policy . . . is not ambiguous merely because the parties disagree over its meaning." Trainwreck W. Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 40 (Mo. Ct. App. 2007). And "[t]he failure of a policy to define a term does not, in and of itself, render it ambiguous." Id. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Burns v. Smith,

---

we must construe the policy in their favor to provide coverage. But under Missouri law, the rules of construction apply only where the insurance policy is ambiguous. See Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. banc 1992) ("Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written."). Thus, to determine whether "quarantined" is open to the interpretation put forward by the plaintiffs, we must first consider whether the policy language is ambiguous.

303 S.W.3d 505, 509 (Mo. banc 2010) (quotation omitted). When interpreting an insurance policy, we must give the policy's language "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." Id. (quotation omitted); Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505, 508 (Mo. banc 1997) ("When interpreting the language of an insurance policy, this Court gives a term its ordinary meaning, unless it plainly appears that a technical meaning was intended."). If a term in the policy is undefined, we may consult standard English language dictionaries to find its ordinary meaning. See Schmitz v. Great Am. Assurance Co., 337 S.W.3d 700, 708 (Mo. banc 2011); Doe Run, 531 S.W.3d at 512.

Against this backdrop, we begin our analysis with the text of the Ski Pass Preserver policy. The policy provides, in relevant part, that Arch will reimburse policyholders for the unused portion of an Ikon Pass if a policyholder "cancel[s]" his or her season pass due to one of several enumerated "covered events," including "being hijacked, quarantined, required to serve on a jury," or "served with a court order to appear as a witness." Only the meaning of the term "quarantined" is at issue here.

In the policy, "quarantined" is used as a verb. To quarantine means "[t]o isolate or confine (a person)." Quarantine, Oxford English Dictionary, https://www.oed.com/view/Entry/155960 (last visited Jan. 26, 2023); see Schmitz, 337 S.W.3d at 708 (explaining that where the policy used the term "ride" as a verb, the court would look to dictionary definitions of its verb form to determine whether it was ambiguous). Multiple dictionaries consistently define the verb as meaning "to isolate."[5] The plain and ordinary meaning of the term, then, generally connotes isolation.

---

[5]See, e.g., Quarantine, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/quarantine (last visited Jan. 26, 2023) ("[T]o isolate from normal relations or communication."); Quarantine, The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=quarantined (last

The plaintiffs, however, argue that the word can also mean "a restraint upon the activities or communication of persons or the transport of goods designed to prevent the spread of disease or pests." Quarantine, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/quarantine (last visited Jan. 26, 2023). The plaintiffs assert that because this selected definition, too, is reasonable, the policy's language is ambiguous. But multiple definitions do not necessarily make a word ambiguous. See Taylor v. Bar Plan Mut. Ins. Co., 457 S.W.3d 340, 346 (Mo. banc 2015) (finding that the "many definitions" of "investment" do not make the term ambiguous, rather, it shows the term is broad). And further, Missouri law requires that we read quarantine in light of the whole policy. See Seeck, 212 S.W.3d at 132.

"Quarantined" appears in the policy alongside "hijacked," "required to serve on a jury," and "served with a court order to appear as a witness." An individual who is subject to any one of these conditions is obligated or forced to remain in a specific location. "Quarantined," read together with the surrounding conditions, implies a restriction akin to compulsory or compelled isolation. The conditions are also directed at the specific individual affected by the action, i.e., *you* are hijacked. The plaintiffs' construction of "quarantined" as a broadly imposed "restraint" directed at no specific party not only lacks the notion of isolation, but fails to harmonize the surrounding conditions also listed as "Other Covered Events" for purposes of the Season Pass Interruption coverage.

The plaintiffs further maintain that their selected definition is a "long-established" and commonly understood meaning of the term. They direct us, for example, to articles published in March and April 2020 describing restrictions like stay-at-home orders as quarantines. However, the COVID-19 pandemic has expanded the meaning of the term. See Word of the Year 2020, Cambridge

_____

visited Jan. 26, 2023) ("To isolate in quarantine."); Quarantine, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/quarantined (last visited Jan. 26, 2023) ("[T]o stay away from others for a period of time because you have a disease, or may have one, in order to prevent the spread of the disease.").

Dictionary, http://view.ceros.com/cambridge/woty/p/1 (last visited Jan. 26, 2023) (explaining that quarantine is now synonymous with "lockdown," and in response to evolving terminology, the Cambridge Dictionary additionally defines it as "a general period of time in which people are not allowed to leave their homes or travel freely, so that they do not catch or spread a disease"). At the time of the Ski Pass Preserver policy's purchase—which occurred before the COVID-19 pandemic—the ordinary person would not associate the term "quarantined," as it is used in the policy, with a broad, less-than-mandatory restraint on travel or activities. See Miller v. O'Brien, 168 S.W.3d 109, 114 (Mo. Ct. App. 2005) ("The cardinal rule for the courts in interpreting a contract, including an insurance policy, is to effectuate the parties' intent at the time of contracting." (quotation omitted)).[6]

In sum, the ordinary person at the time the Ski Pass Preserver policy was purchased would have understood "quarantined" to mean the compulsory isolation of the insured.[7] Reading the policy as a whole, this is the only reasonable

---

[6]The concurrence asserts that the ordinary person who purchased the Ski Pass Preserver policy would expect to receive coverage if they were subject to a stay-at-home order. But Missouri law requires that we look at the intent of the insured and the insurer at the time they entered into the policy, and we cannot agree that the parties at the start of the 2019 ski season would have understood "quarantined" to encompass stay-at-home orders of the kind at issue here. The concurrence would also read the policy's "Travel Supplier" exclusion to preclude coverage of the plaintiffs' claims. But this exclusion is arguably ambiguous, as it conflicts with the policy provision that provides for coverage in the event of a natural disaster or the uninhabitability of the ski resort destination. See Golden Rule Ins. Co. v. R.S., 368 S.W.3d 327, 336 (Mo. Ct. App. 2012) ("A direct, irreconcilable conflict between two insurance provisions creates an ambiguity."); Burns, 303 S.W.3d at 510 ("Missouri . . . strictly construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies.").

[7]The two courts that have considered whether the term "quarantined" is ambiguous in substantially similar insurance policies have also concluded the same. See DePasquale v. Nationwide Mut. Ins. Co., No. 21-3467, 2022 WL 1017956 (6th Cir. Apr. 5, 2022); In re United Specialty Ins. Co. Ski Pass Ins. Litig., No. 20-MD-

construction, and we agree with the district court that the policy language is unambiguous.

B.

The next question is whether the plaintiffs plausibly allege they were quarantined such that their losses are covered by the Ski Pass Preserver policy. The complaint alleges that (1) the "Government orders and related resort closures were quarantines," (2) the plaintiffs and "all proposed class members were subject[] to these restraints," and (3) therefore, the plaintiffs were "quarantined and prevented from using their Ikon ski passes."

Though the complaint uses the term "quarantined," it fails to allege as a factual matter that the plaintiffs were forced to isolate from others. The complaint also alleges no facts that would permit an inference that the stay-at-home orders and related ski resort closures imposed a form of compulsory isolation. The California stay-at-home order, for example, directed residents to stay at home "except as needed to maintain continuity of operations of . . . critical infrastructure sectors." See Cal. Exec. Order No. N-33-20, § 1. California residents, however, were still permitted to leave their homes to access necessities or go to work. Id. The stay-at-home order provided that when residents did leave their homes, "they should at all times practice social distancing." Id. Although these measures and the closure of ski resorts restrained the plaintiffs from certain activities, the degree and manner of the restraints imposed cannot plausibly be considered a mandatory requirement to isolate from others. Thus, the complaint did not plausibly allege that the stay-at-home orders and related ski resort closures are quarantines within the meaning of the Ski Pass Preserver policy, and thus did not plausibly allege a loss based on a covered event.

_____

02975-YGR, 2021 WL 4974981 (N.D. Cal. Oct. 26, 2021), aff'd on other grounds, No. 21-16986, 2022 WL 17101144 (9th Cir. Nov. 22, 2022).

-10-

IV.

For the foregoing reasons, we affirm the judgment of the district court.

GRASZ, Circuit Judge, concurring in the judgment.

I agree the district court's dismissal of the putative class action should be affirmed, but for a different reason. In my view, this case can be resolved by holding that the "travel supplier exclusion" applies. This policy exclusion provides that "[b]enefits are not payable for any loss due to, arising or resulting from . . . failure to supply services by a Travel Supplier." A "Travel Supplier" is defined as "any entity or organization that coordinates or supplies the Season Pass for You." The ski resort failed to supply services and the loss to plaintiffs arose from this failure under the terms of the exclusion. I would end the analysis there.

The court instead resolves the case under the "Other Covered Events" provision. I respectfully disagree with the court's analysis of coverage under this provision and specifically its interpretation of the provision providing coverage for a loss incurred due to the insured being "quarantined." The court correctly recognizes Missouri law dictates that we must "appl[y] the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolve[] ambiguities in favor of the insured." Burns v. Smith, 303 S.W.3d 505, 509 (Mo. banc 2010) (quoting Seeck v. Geico Gen. Ins. Co., 212 S.W.2d 129, 132 (Mo. banc 2007)). But in my view the court's interpretation of the phrase "quarantined" strays from these requirements.

First, I disagree with the court's conclusion that the undefined policy term "quarantined" is unambiguous. Like the court, in the absence of any definition in the policy, I looked for the ordinary meaning of the term. As the court recognizes, review of standard English language dictionaries reveals different possible meanings, including: (1) "to isolate or confine (a person)", ante, at 7 (quoting Quarantine, Oxford English Dictionary, https://oed.com/view/Entry/155960; or (2)

-11-

"a restraint upon the activities or communication of persons or the transport of goods designed to prevent the spread of disease or pests, <u>ante</u>, at 8 (quoting <u>Quarantine</u>, Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/quarantine). The court favors the first definition, modified by the word "compulsory" or "compelled." <u>Ante</u>, at 8. But because the term is reasonably susceptible of at least two meanings, one of which provides coverage to the insured, it is ambiguous as a matter of Missouri law, and the meaning that favors the policyholder should be adopted. Unlike the court, I see no basis in the policy language—even read in conjunction with surrounding provisions—for limiting the definition of "quarantined" to the more restrictive variation.

Most fundamentally, I believe the ordinary person who purchased an insurance policy that provided coverage if they were "quarantined" would expect to be covered under the policy if they were personally subject to a stay-at-home order aimed at preventing the spread of disease such that they were restrained from using their season ski pass. For both these reasons, I cannot concur with the court's interpretation of "quarantined."

Finally, I disagree with the court's conclusion that the plaintiffs did not plausibly allege they were "quarantined." The court's analysis starts from the proposition that any complaint that does not use the narrow definition of "quarantined" fails to plausibly state a claim, explaining "The complaint . . . alleges no facts that would permit an inference that the stay-at-home orders . . . imposed a form of compulsory isolation." <u>Ante</u>, at 10. This conclusion is the unavoidable result of adopting the narrow definition of "quarantined" that does not favor the policyholder.

As I believe the court's analysis contravenes Missouri law, I depart from the court's rationale for affirming the district court. But because I believe the travel supplier exclusion applies, I concur in the opinion affirming the district court's dismissal.

_____